The METROPOLITAN DEVELOP-MENT COMMISSION OF MARION COUNTY, Appellant–Plaintiff,

v.

Thomas A. SCHROEDER, Appellee–Defendant.

No. 49A04–9901–CV–40.

Court of Appeals of Indiana.

April 27, 2000.

744

Marguerite M. Sweeney, Assistant Corporation Counsel, Office of Corporation Counsel, Indianapolis, Indiana, Attorney for Appellant.

J.F. Beatty, Nancy G. Endsley, Landman & Beatty, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

DARDEN, Judge

### STATEMENT OF THE CASE

The Metropolitan Development Commission of Marion County (the "Commission"), seeking injunctive relief and the imposition of fines, filed an action against Thomas A. Schroeder based on Schroeder's overnight outdoor storage of inoperable vehicles. The trial court entered judgment in favor of Schroeder following a bench trial, and the Commission now appeals.

We reverse.

### ISSUES

I. Whether the trial court's judgment in favor of Schroeder on the Commission's action to enforce the zoning ordinance is clearly erroneous.

II. Whether the trial court's judgment in favor of Schroeder on the Commission's action to enforce a variance condition is clearly erroneous.

### FACTS

Schroeder is the owner of real estate located at the corner of South Meridian Street and East Thompson Road in Indianapolis, which is commonly known as 50 East Thompson Road and also known as 4989 South Meridian Street (hereinafter, "the Real Estate"). At all relevant times to this action, the Real Estate was located in the C–3 zoning district under the Commercial Zoning Ordinance of Marion County, a part of the Code of Indianapolis and Marion County. The zoning ordinance, which sets out the development standards for the C–3 district, provides in pertinent part that gasoline service stations, lubricating and oil change services, convenience markets, services centers or functions shall not include "the storage of inoperable, damaged or wrecked vehicles, other than those awaiting immediate repair." (R. 272–73).

In the early 1970's, the Real Estate was owned by Marathon Oil Company ("Marathon") and used for the operation of a three bay gas service station. The station closed in approximately 1973 and the Real Estate remained vacant for several years. Marathon subsequently leased the Real Estate to Arthur Henson and Dennis Merillat. In 1977, on application of Henson and Merillat, the Marion County Board of

Zoning Appeals (the "BZA") granted a variance from certain use requirements to permit the expansion of the existing three bay service station to a seven bay transmission sales and service business with signs and off-street parking on the Real Estate. The BZA imposed several conditions upon the granting of the variance, one of which stated: "No outside overnight storage of vehicles other than one vehicle over a 24 hour period." (R. 234). The variance and its conditions were not recorded in the Marion County Recorder Office. Henson and Merillat then began to operate an AAMCO Transmissions business on the Real Estate.

In 1979, Henson and Merillat sold the AAMCO business to Schroeder, who began leasing the Real Estate from Marathon. In December of 1993, Schroeder purchased the Real Estate from Marathon. Marathon's Limited Warranty Deed to Schroeder conveyed the real estate subject to "zoning ordinances, subdivision and planning laws and regulations and building code restrictions and all laws, rules and regulations relating to land and structures and their use." (R. 392, 489). Because a title search of the Real Estate did not reveal the existence of the 1977 variance or variance condition, Schroeder was unaware of the 1977 variance that limited the number of vehicles stored overnight on the property. (R. 567).

In the Spring of 1995, Schroeder erected a fence around the perimeter of the Real Estate. On June 21, 1995, the Commission issued a civil zoning violation citation to Schroeder regarding the Real Estate (listed in the citation as 50 E. Thompson Road) for failure to comply with the development standards in that there was a barbed wire on the fence on the Real Estate.[1] On July 7, 1995, the Commission filed a complaint for injunction and fine against Schroeder based on this alleged violation of the zoning ordinances and sub-

sequent violations of the same. Specifically, the Commission sought 1) a fine for each violation; 2) an order requiring Schroeder to remove the barbed wire; and 3) an order permanently enjoining Schroeder "from using or permitting the use of the Real Estate for the operation of a permitted use without complying with development standards, specifically the location and maintenance of barbed wire in the required front yard and in front of the existing building, or any other use which is not permitted by Marion County zoning ordinances." (R. 398).

On May 9, 1996, the Commission moved to vacate a scheduled compliance hearing, stating that "[t]he real estate located at 50 East Thompson Road is in substantial compliance with applicable zoning ordinances" and that Schroeder had paid all fines and costs due. (R. 402). The trial court judge granted the motion, vacated the hearing and deemed the case "disposed of." (R. 405).

On October 3, 1997, zoning inspector Scott Brown inspected the Real Estate and observed twelve vehicles without current license plates. The Commission subsequently issued a civil zoning violation citation to Schroeder for the outdoor storage of inoperable motor vehicles on October 3. On November 3, Brown inspected the Real Estate again and observed five vehicles on the property.

In December of 1997, the Commission filed a complaint for injunction and fine against Schroeder. In Count I, the Commission alleged that on or about October 3, 1997, the Real Estate was "being used for the outdoor storage of one or more inoperable vehicles" in violation of zoning ordinance and that subsequent inspection of the Real Estate indicated that violations were continuing. In Count II, the Commission alleged that the Real Estate was "being used for the overnight storage of greater than one vehicle, which is prohibit-

---

1. Prior to issuing this citation, zoning inspector Rhonda Walthen visited the Real Estate approximately five or six times and observed the storage of more than one vehicle outside over a 24–hour period.

ed by one vehicle condition of variance." The Commission sought several remedies, including: 1) the imposition of a fine in the amount of $2,500 for each violation; 2) an order permanently enjoining Schroeder from using or permitting the use of the Real Estate "for the unlawful uses described above;" and 3) an order requiring Schroeder "to remove any inoperable vehicles stored outside and to remove all vehicles stored outside overnight except one permitted by the variance grant." (R. 13). Schroeder generally denied the allegations of both counts and asserted numerous affirmative defenses, including: statute of limitations, laches, waiver and acquiescence, equitable estoppel, and issue/claim preclusion.

At the hearing, Schroeder testified that his company has "probably always had more cars on the lot than one car," and that "virtually over a long period of time there's always been ... a number of cars, fifteen or twenty, twenty-five cars parked outside" overnight. (R. 494). He further testified that the number of cars he keeps on the Real Estate had increased over the years because of 1) the increase in the length of time it takes to diagnose the car problems and 2) the decrease in the accessibility of the parts to fix the problems. Schroeder acknowledged that some vehicles had been on the Real Estate "for a number of months" and that it was possible that some vehicles had remained outside on the Real Estate for longer than a year. (R. 498). Schroeder claimed that he had been unaware of the 1977 variance when he began to lease the property from Marathon in 1979, and was unable to testify as to when he learned of the variance. When asked whether he could stay in business if he could only park one car outdoors overnight, he responded:

It would just be impossible to operate the business and only store one car overnight. I've got no alternative. I've got no place to put the cars. Even if I had a lot up the street, you know, if – I would have to take two people to – if I

went to rent a lot somewhere, one person to drive the car and the other person to drive the car back. Some of the cars – what if the cars didn't move? They were cars that I just towed in at 5:00 in the afternoon and hadn't had a chance to work on them or check out even?

(R. 568).

On December 17, 1998, the trial court, upon timely request, made special findings of fact and stated conclusions of law thereon and entered judgment in favor of Schroeder on both counts of the Commission's complaint.

## DECISION

### Standard of Review

Before addressing the merits of this appeal, we note our standard of review. When a trial court has entered specific findings of fact and conclusions of law along with its judgment pursuant to Ind. Trial Rule 52, our standard of review is two-tiered. *Estate of Whitehead*, 718 N.E.2d 1207, 1210 (Ind.Ct.App.1999). We first must determine whether the evidence supports the findings and second, whether the findings support the judgment. *Carnahan v. Moriah Property Owners Ass'n, Inc.*, 716 N.E.2d 437, 443 (Ind.1999). The findings are clearly erroneous only when a review of the record leaves us firmly convinced a mistake has been made. *Id.* We disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Id.*

### I. Zoning Ordinance

#### A. Doctrine of Laches

The trial court concluded that the doctrine of laches barred the Commission's action to enforce the zoning ordinance. It is well established that laches is not a defense to a municipality's action to enforce its zoning ordinances. *See, e.g., Harbour Town Associates, Ltd. v. City of Noblesville*, 540 N.E.2d 1283, 1287 (Ind.Ct. App.1989); *Hannon v. Metropolitan De-*

*velopment Commission of Marion County,* 685 N.E.2d 1075, 1080 (Ind.Ct.App.1997). Because the trial court failed to follow this well-established rule of law, the trial court's findings and stated conclusions thereon that laches barred the Commission's action to enforce the zoning ordinance is clearly erroneous.

### B. *Waiver and Acquiescence*

The trial court concluded that the Commission, by knowingly acquiescing in the conditions existing on the Real Estate, had "implicitly waived" the right to enforce the zoning ordinance. (R. 162). The Commission argues that the trial court's determination in this regard is clearly erroneous. We agree.

 Initially, we note that Schroeder has not cited, nor have we found, any Indiana authority supporting the proposition that the doctrines of waiver and acquiescence are defenses to an action by a municipality to enforce its ordinances. The equitable defense of acquiescence arises when a plaintiff has assented for an unreasonable length of time to the assertion or operation of the wrong or adverse right. *See* 12 I.L.E., Equity, § 52, p. 301. In the case of *Simon v. City of Auburn, Ind., Bd. of Zoning Appeals,* 519 N.E.2d 205, 215 (Ind.Ct.App.1988), this court identified three elements of laches: 1) inexcusable delay in asserting a right; 2) implied waiver arising from knowing acquiescence in existing conditions; and 3) circumstances causing prejudice to the adverse party. Accordingly, acquiescence in an alleged wrong or an adverse right is an essential element of laches. To the extent that public policy interests prohibit a private party from asserting laches as a defense against a municipality in the enforcement of its zoning ordinances, they also would preclude a private party from asserting acquiescence -an element of laches- in such an action. *See Harbour Town Associates, Ltd.,* 540 N.E.2d at 1287 (discussing the public policy interests prohibiting a private party from asserting laches against a municipality).

 Further, waiver is the intentional relinquishment of a known right. *Panhandle Eastern Pipe Line Co. v. Tishner,* 699 N.E.2d 731, 737 n. 1 (Ind.Ct.App.1998). The trial court's findings do not address whether the Commission intentionally relinquished all future rights of enforcing the zoning code on the Real Estate. Importantly, our review of the record fails to reveal that the Commission ever communicated to Schroeder that it was attempting to relinquish rights to enforce the zoning ordinance in respect to Schroeder's use of the Real Estate. Similarly, the findings do not address whether the Commission even had the authority to relinquish or waive the rights of the municipality to enforce its ordinances. In all, the trial court's findings merely track the Commission's failure to discover or enforce the provision of the zoning ordinance at issue.[2] Under these circumstances, we find that the evidence submitted by Schroeder was insufficient to support the trial court's finding that waiver and acquiescence barred the Commission's action to enforce the zoning ordinance.

### C. *Non–Conforming Use*

The Commission next claims that the trial court's judgment that Schroeder had a valid non-conforming use is clearly erroneous.[3] We agree.

 A "nonconforming use" is a use of property which lawfully existed pri-

---

2. For example, the trial court found that 1) the Commission had inspected the Real Estate numerous times before filing its 1995 complaint for injunctive relief against him; 2) the Commission filed a motion to vacate a compliance hearing in May 1996 because "the real estate ... substantial compliance with applicable zoning ordinances"; and 3) from July 1995 through May 1996, Schroeder had continually violated the zoning ordinances.

3. We note that Schroeder has failed to brief this issue.

or to the enactment of a zoning ordinance, and which is allowed to continue after the effective date of the ordinance even though it does not comply with the applicable use restrictions. *Ragucci v. Metropolitan Development Com'n of Marion County,* 685 N.E.2d 104, 105 (Ind.Ct.App.1997). Existing nonconforming uses are typically exempted from use restrictions, because the right of a municipality to enact zoning restrictions is subject to the vested property interests acquired prior to the enactment of the ordinances. *Id.* The method for establishing a non-conforming use is to prove that the use began prior to the applicable zoning ordinance. *See Metropolitan Development Commission of Marion County v. Hair,* 505 N.E.2d 116, 117 (Ind.Ct.App.1987). Here, the trial court did not find that the property had a nonconforming use that lawfully existed prior to the enactment of the zoning ordinances. Further, Schroeder admitted that his use was permitted only by a variance and that he had no evidence that his use of the property pre-dated the zoning ordinance. Therefore, the trial court's conclusion that Schroeder had a valid non-conforming use is also clearly erroneous.

### D. *Statute of Limitations*

■ Schroeder claims that we must nevertheless affirm the trial court's judgment in his favor on the Commission's action to enforce the zoning ordinance because the trial court's findings reveal that the Commission brought the action after the expiration of the applicable statute of limitations. Where a trial court has issued special findings pursuant to T.R. 52(A), the reviewing court may affirm the judgment on any legal theory supported by the findings. *Mitchell v. Mitchell,* 695 N.E.2d 920, 923 (Ind.1998). Before affirming on a legal theory supported by the findings but not espoused by the trial court, the reviewing court should be confident that its affirmance is consistent with all of the trial court's findings of fact and inferences drawn from the findings. *Id.* at 924.

■ Schroeder is correct that the Commission is required by statute to bring an action to enforce an ordinance within two years after the alleged conduct or violation. *See* Ind.Code § 36–1–6–3 ("a proceeding to enforce an ordinance must be brought in accordance with IC 34–28–5"); Ind.Code § 34–28–5–1(c)(2) (an action to enforce an ordinance "must be brought within two (2) years after the alleged conduct or violation occurred").

Here, the Commission alleged in its complaint that a violation occurred on or about October 3, 1997 when "the Real Estate was being used for the outdoor storage of one or more inoperable vehicles...." (R. 23). The Commission brought this action based on this alleged violation on December 10, 1997. Therefore, the Commission timely brought this within two years of the alleged conduct or violation of the zoning ordinance sought to be enforced.

Schroeder nevertheless maintains that the statute of limitations began to run in 1995, when the Commission performed its inspections on the Real Estate and issued a citation to Schroeder for having a barbed wire fence. Schroeder's argument is based on the trial court's finding that in 1995, the Commission "knew, or had the means of knowledge," that Schroeder was violating the applicable zoning ordinances. (R. 160). However, as noted above, the Commission's complaint did not seek to enforce any 1995 zoning violations on the Real Estate or seek the imposition of fines for the same. Further, under General Ordinance No. 165, Appendix D, Part 26, Section 6 B (a 1993 amendment to the Code of Indianapolis and Marion County), "[e]ach day a civil zoning violation remains uncorrected constitutes a second or subsequent violation." Therefore, we find that the Commission timely filed its action against Schroeder to enforce the zoning ordinance.[4]

---

4. In support of his argument that the complaint was untimely, Schroeder cites *Custer v.*

### E. Res Judicata/Judicial Estoppel

Schroeder next contends that the judgment of the trial court as to Count I must be affirmed because the trial court's findings support a conclusion that Commission's action is barred by judicial estoppel. Schroeder's contention is essentially premised on a claim that the Commission's statement in a 1995 motion to vacate a show cause hearing that the Real Estate was in substantial compliance with applicable zoning ordinances bars the present action to enforce the zoning ordinance.

 Judicial estoppel precludes a party from asserting a position in a legal proceeding inconsistent with one previously asserted. *United Rural Elec. v. Indiana Michigan Power,* 716 N.E.2d 1007, 1010 (Ind.Ct.App.1999). The Commission's present action against Schroeder is based on Schroeder's outdoor, overnight storage of one or more inoperable vehicles on the Real Estate in 1997. The Commission's 1995 enforcement action against Schroeder was based on the presence of barbed wire on the Real Estate in 1995. Thus, the Commission's present action to enforce the 1997 zoning ordinance violation is not inconsistent with a position asserted in the 1995 action.

 In a similar argument, Schroeder suggests that the trial court's judgment must be affirmed because the trial court's findings support a conclusion that the Commission's action is barred by the claim preclusion branch of res judicata. This argument is equally unpersuasive. The law of res judicata "operates to 'preclude litigation regarding matters which have already been litigated.... [A] judg-

ment on the merits is an absolute bar to a subsequent action between the same parties on the same claim.'" *New Haven v. Chemical Waste Management, L.L.C.,* 701 N.E.2d 912, 923–24 (Ind.Ct.App.1998), *trans. denied* (quoting *Mutchman v. Consolidation Coal Co.,* 666 N.E.2d 461, 464 (Ind.Ct.App.1996)). Claim preclusion occurs when a prior adjudication on the merits by a court of competent jurisdiction acts as a bar to a subsequent action on the same claim between the same parties or those in privity with them. *Hermitage Ins. Co. v. Salts,* 698 N.E.2d 856, 859 (Ind.Ct.App.1998).

 We are unaware of any Indiana cases specifically addressing whether a previous enforcement action bars a city from bringing a subsequent action against the same defendant for other violations that may have been occurring during the first prosecution. Nevertheless, we find persuasive the reasoning in *City of Evanston v. G & S Mortgage and Investment Corp.,* 11 Ill.App.3d 642, 297 N.E.2d 331 (1973). In that case, the City of Evanston brought successive actions against an apartment owner for violation of zoning and housing codes. In addressing the applicability of the doctrine of res judicata, the Illinois Appellate Court determined:

> In the instant case, the subsequent action was based on a different cause of action and not on the same cause of action, because under the City's zoning ordinance each day's violation is a separate offense. The offenses being prosecuted in the second action were different and separate offenses from the offenses which had been prosecuted in the first

*Plan Commission of the City of Garrett,* 699 N.E.2d 793 (Ind.Ct.App.1998), wherein a panel of this Court addressed "whether a city may bring an action outside the two-year statutory limit to enforce a municipal ordinance when the defendant does not raise the time limit as an affirmative defense but instead asserts it as a basis for a motion for judgment on the evidence." 699 N.E.2d at 794. *Custer* assumed for purposes of appeal that the City of Garrett brought the action to enforce the

zoning ordinance outside the two-year statutory limit and did not discuss when the time began to run against the City of Garrett. *Id.* 794–95. Further, *Custer* did not mention whether the City of Garrett's zoning ordinance had a provision providing that each day a civil zoning violation remains uncorrected constitutes a second or subsequent violation. Therefore, we fail to see how *Custer* supports Schroeder's argument.

action. As a result, the doctrine of estoppel by judgment with its "might have been" res judicata is inapplicable to this instant second action.

*Id.* at 334. In the present case, the Commission could not have pleaded the identical facts in 1995 as it pleaded in the instant action, which arose from violations occurring on the Real Estate in 1997 under an ordinance which provides that each day a violation continues is a separate violation. Accordingly, the claim now at issue was not, and could not have been, determined in the prior action.[5]

In conclusion, we find that the trial court's judgment in favor of Schroeder is clearly erroneous.

## II. *Variance Condition*

### A. *Equitable Estoppel*

■ The Commission contends that the trial court's determination that the Commission's action to enforce the variance condition was barred by the doctrine of equitable estoppel is clearly erroneous. We agree.

■ Equitable estoppel is available if one party, through its representations or course of conduct, knowingly misleads or induces another party to believe and act upon his conduct in good faith and without knowledge of the facts. *Wabash Grain, Inc. v. Smith,* 700 N.E.2d 234, 237 (Ind.Ct. App.1998), *trans. denied.* Equitable estoppel cannot ordinarily be applied against government entities. *Hannon v. Metropolitan Development Commission of Marion County,* 685 N.E.2d 1075, 1080 (Ind.Ct. App.1997). This Court has recognized multiple public interest and equitable reasons not to allow the defense of equitable estoppel when a municipality elects to enforce zoning ordinances, including: 1) the purpose of zoning is to protect the public

interest; 2) zoning regulations are created pursuant to the political process; 3) a particular city representative cannot waive the public's right to enforce the ordinance; 4) the wrongdoer brought his condition on himself; and 5) allowing a balance of equities when enforcing violations would encourage violations and greatly debilitate any zoning policy. *See id.* at 1080, n. 8, citing *Harbour Town,* 540 N.E.2d at 1287.

The exception to the rule that equitable estoppel cannot be applied against governmental entities is if the public interest would be threatened by the government's conduct. *Hannon,* 685 N.E.2d at 1080. In the present case, the trial court found the following representations and affirmative conduct of the Commission: 1) an unidentified employee of the Department of Metropolitan Development represented to Schroeder that there was no variance for 50 East Thompson Road, and 2) the Commission moved to vacate a scheduled compliance hearing in 1996, indicating that Real Estate was in substantial compliance with applicable zoning ordinances. Although many of the trial court's findings relate to how Schroeder was harmed by this affirmative conduct of the Commission, they do not explain how the public interest was threatened by the Commission's conduct. Therefore, the trial court's findings do not support its conclusion that equitable estoppel bars the Commission's action to enforce the variance condition.

In balancing the equities, we find any threat to the public by the Commission's conduct seems minimal when compared to the public interests served by barring equitable estoppel defenses against zoning violations. We agree with the Commission that "[i]n carving out an enforcement-free zone for Schroeder and his vehicles, the trial court has served Schroeder's interest at the expense of the public interest." Ap-

---

5. The Commission also claims that the trial court erred in concluding that equitable estoppel barred its action to enforce the Zoning Ordinance. We need not address this contention because the trial court did not make such a conclusion, and Schroeder concedes that equitable estoppel is not applicable to the Commission's action to enforce the Zoning Ordinance.

pellant's Reply Brief, p. 5. Therefore, we find no compelling reason to deviate from the general rule barring the equitable estoppel defense against zoning violations. As a matter of law, the trial court's judgment is not supportable in its findings nor on the evidence in the record.

### B. *Regulatory Taking Without Just Compensation*

The trial court concluded that "enforcement of compliance with the variance condition at this time" would constitute a taking of Schroeder's property without just compensation in violation of the Fifth Amendment of the United States Constitution. (R. 163). In essence, the trial court determined that the variance condition, which limited the outdoor storage of vehicles to one vehicle, constitutes a regulation and that enforcement of this regulation would deny Schroeder of all economically beneficial use of the land.

■■■■ The Fifth Amendment to the United States Constitution includes a prohibition against taking private property for public use without just compensation.[6] This prohibition is designed to prevent the government from forcing some people to bear public burdens that, in all fairness, should be borne by the public as a whole. *Armstrong v. United States,* 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960).

■■■■ Although property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. *Board of Zoning Appeals v. Leisz,* 702 N.E.2d 1026, 1028 (Ind.1998). There are two discrete categories of regulations that violate the Takings Clause regardless of the legitimate state interest advanced: 1) regulations that compel a property owner to suffer a physical invasion of his property; and 2) regulations that deny all eco-

nomically beneficial use of the property. *Id.* at 1029. It is undisputed that Schroeder has not suffered a physical invasion of his property as a result of a regulation; therefore, we must determine if a regulation has denied Schroeder all economically beneficial use of the property.

■■■ We find that no regulatory "taking" has occurred because the trial court's findings and the undisputed evidence reveal that Schroeder does not possess a use interest in the Real Estate that will be affected by the enforcement of the variance condition. In *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), the Supreme Court indicated that a person's interest in property should be measured as of the time it is acquired:

> Where the State seeks to sustain regulation that deprives land of all economically beneficial use, we think it may resist compensation only if the logically antecedent inquiry into the nature of the owner's estate shows that the proscribed use interests were not part of his title to begin with. This accords, we think, with our 'takings' jurisprudence, which has traditionally been guided by the understandings of our citizens regarding the content of, and the State's power over, the 'bundle of rights' that they acquire when they obtain title to property.

505 U.S. at 1027, 112 S.Ct. at 2899.

■■■ Here, Schroeder acquired a "bundle of rights" when he purchased the Real Estate, but he also acquired a bundle of limitations and restrictions on its use. The trial court found that Schroeder purchased the Real Estate from Marathon, subject to "zoning ordinances, subdivision and planning laws and regulations ... and regulations relating to land and structure and their use." (R. 392, 489). The trial court's

---

**6.** The Fifth Amendment to the United States Constitution provides in relevant part that "[n]o person shall ... be deprived of ... property, without due process of law; nor shall private property be taken for public use, without just compensation." The Taking

Clause of the Fifth Amendment applies to State action through the Fourteenth Amendment. *Dolan v. City of Tigard,* 512 U.S. 374, 83–384, 114 S.Ct. 2309, 2315–2316, 129 L.Ed.2d 304 (1994).

findings also reveal that one such "regulation" or limitation was a condition included in a variance granted to the previous possessors of the Real Estate that denied the previous landowner and possessors of the Real Estate the right to store more than one vehicle overnight on the Real Estate. Therefore, the right to store more than one vehicle overnight on the Real Estate was not a part of the bundle of property rights that Marathon conveyed to Schroeder. Because Schroeder did not acquire a right to store more than one vehicle overnight, Schroeder does not have a use interest in the Real Estate which can be "taken" by the Commission's enforcement of the variance condition.

### C. *Unreasonable Variance Condition*

■ The trial court concluded that the variance condition was both unreasonable and unconstitutional and thus, void and unenforceable against Schroeder.

■ Ind.Code § 36–7–4–918.4 authorizes a board of zoning appeals to grant a variance and permit a property owner to use his property in a manner forbidden by the zoning ordinance. *Schlehuser v. City of Seymour,* 674 N.E.2d 1009, 1012 (Ind. Ct.App.1996). The statute further provides that a board may impose *reasonable* conditions as a part of its approval of a variance of use from the terms of the zoning ordinance. *Id.* As appropriately noted by the Connecticut Supreme Court,

Were this not so, the board, for lack of such right, might be forced, at times to deny a variance and thus to perpetuate an owner's plight crying for relief. Since variances allow uses forbidden by the regulations, the attachment of conditions to the granting of a variance alleviates the harm which might otherwise result. Were it not for the conditions imposed by the board of appeals, variances might not be supportable as being in harmony with the general purpose and intent of the zoning ordinance.

*Town of Burlington v. Jencik,* 168 Conn. 506, 362 A.2d 1338, 1340 (1975). There-

fore, we must determine whether the variance at issue was subject to reasonable conditions of approval at the time it was imposed.

■ If the condition is not reasonable, and "was thus invalid when imposed, it can be excised, unless the use permitted by the variance, if continued without the condition, would alter the character of the neighborhood or do violence to the zoning plan, or unless a balance of equities favors protection of property development patterns that have relied on the existence of the condition and fairly call for its continuation." *Aldrich v. Schwartz,* 258 N.J.Super. 300, 609 A.2d 507, 512 (1992).

■ Unfortunately, neither I.C. § 36–7–4–918.4 nor Indiana case law explain what a "reasonable" condition is. However, we find appropriate considerations in that regard provided in *Schlehuser,* 674 N.E.2d at 1009, wherein this court stated:

Conditions or restrictions must be clearly stated so that the landowner and his neighbors are not left in doubt as to the nature or extent of the use permitted. Restrictions must also be constitutional and may not themselves exceed the scope of authority delegated to the BZA by the relevant ordinance or statute. They should (1) not offend any provision of the zoning ordinance; (2) require no illegal conduct on the part of the permittee; (3) be in the public interest; (4) be reasonably calculated to achieve a legitimate objective of the zoning ordinance; and (5) impose no unnecessary burdens on the landowner.

674 N.E.2d at 1014 (citations omitted).

In the present case, the trial court did not find, nor does the record reflect, that the variance condition offends any provision of the zoning ordinance. The trial court also made no finding as to whether the condition was reasonably calculated to achieve a legitimate objective of the zoning ordinance. Schroeder, who had the burden of proof, failed to present any evidence

as to the BZA's considerations when it imposed the one-vehicle condition.

The purpose of the C-3 Neighborhood Commercial District as stated in the zoning ordinance is as follows:

> The C-3 District is designed to permit the development of a complete range of retail sales and personal, professional and business services required to meet the maximum demand of a fully developed residential neighborhood – regardless of its size. Examples of such types of uses include neighborhood shopping centers, sales of retail convenience or durable goods, shopping establishments, retail and personal and professional service establishments. It does not make provision, however, for those businesses that draw customers in significant numbers from well beyond a neighborhood boundary and are, therefore, unusually heavy traffic generators, such as theaters. It does not allow those businesses that require the outdoor display, sale or storage of merchandise; require outdoor operations; or permit outdoor service and consumption of food and beverages. In general, to achieve maximum flexibility of permitted land use, the C-3 District makes possible a highly varied grouping of indoor retail and business functions.

(R. 271). Thus, the zoning ordinances place significant limitations on outdoor storage and operations. The limitations of the storage of vehicles was a proper and reasonable attempt to minimize the impact of an intense automobile repair use on the surrounding neighborhood, in keeping with the stated purpose of the C-3 district. Therefore, we conclude that the trial court's determination that the condition was unreasonable is clearly erroneous.

In its conclusions of law, the trial court speculated that compliance with the condition "could cause Schroeder to violate the Indiana Mechanics Lien law and statutory and common laws prohibiting conversion prohibit Schroeder from removing abandoned and repaired vehicles from the property in order to comply with the variance condition." (R. 164). However, we find nothing in the plain language of the condition that *requires* any illegal conduct on the part of Schroeder. Indeed, the record discloses that at the time Schroeder began operating the AAMCO business, he had numerous options regarding his potential problem of storing of abandoned and repaired vehicles, including: refusing to take on work without adequate assurance of payment; storing seven vehicles in the service bays and one outside; and storing excess vehicles at another site where vehicle storage is legal. Thus, the trial court's finding in this regard is clearly erroneous.[7]

Finally, the trial court concluded that the condition imposes an unnecessary burden upon Schroeder and the Real Estate. In support of this conclusion, the trial court found as follows:

> Use of the Real Estate as an Aamco Transmission business is not viable if Schroeder must comply with the variance condition. Such use would not have been viable in 1977, or at any time thereafter, if compliance with the variance condition had been previously enforced.

(R. 161). However, this finding is unsupported by the evidence inasmuch as Schroeder failed to present any evidence regarding the viability of the AAMCO business from 1977, when the condition was imposed, and 1979, when he began to occupy the Real Estate. Further, there was no evidence that the condition was not complied with prior to Schroeder's occupa-

---

7. The trial court also stated in its findings that according to a local organization and Schroeder's immediate neighbors, the AAMCO business' use on the Real Estate is an asset to the community and enforcement of the condition would not be in their best interest. (R. 160).

While this may establish grounds for seeking a new variance request with the board of zoning appeals, it does not establish that the original condition is void as being unreasonable at its inception.

tion of the Real Estate. Therefore, the trial court's judgment is not supported by the findings nor by the evidence in the record.

### D. *Equal Protection*

Schroeder argues that the judgment of the trial court can be affirmed because the application and enforcement of the variance condition would violate his right to equal protection under the Fourteenth Amendment of the United States Constitution and Article 1, Section 23 of the Indiana Constitution. He suggests that the trial court's finding that a nearby auto repair business stores an unlimited number of vehicles on its property outside overnight supports the conclusions that his equal protection rights were violated. We disagree.

 The trial court's finding, in and of itself, does not support a conclusion that the Commission has violated Schroeder's equal protection rights. The mere failure to bring enforcement actions against others who may be violating the zoning ordinance does not excuse Schroeder's violation or bar the Commission's prosecution against him. *See Jones v. Hendricks County Plan Commission,* 435 N.E.2d 82, 84 (Ind.Ct.App.1982). As properly noted in *Hameetman v. City of Chicago,* 776 F.2d 636 (7th Cir.1985), "[t]he Constitution does not require states to enforce their laws (or cities their ordinances) with Prussian thoroughness as the price of being allowed to enforce them at all. Otherwise few speeders would have to pay traffic tickets." 776 F.2d at 641 (citations omitted). The trial court did not make any findings as to whether: 1) Schroeder was singled out for an invidious discriminatory reason; 2) the auto repair business has a

legally established non-conforming use or a variance which permits outdoor storage of vehicles; or 3) the Commission has chosen not to enforce the zoning ordinance against the auto repair business. We therefore conclude that the trial court's findings do not support a conclusion that the Commission's enforcement of the zoning ordinance amounts to a violation of his equal protection rights.[8]

We therefore conclude that the trial court's judgment as to the Commission's action to enforce the variance condition is clearly erroneous.

### Conclusion

In conclusion, the judgment of the trial court on both counts of the Commission's complaint against Schroeder is reversed. Because we reverse the judgment in favor of Schroeder, we grant the Commission's request to set aside the award of costs in Schroeder's favor.

We reverse.

FRIEDLANDER, J., concurs.

GARRARD, Sr.J., dissents with separate opinion.

GARRARD, Senior Judge, dissenting with separate opinion.

While I agree with the majority's statement of the general principles of law applicable to this case, I disagree with their application to what was for all intents and purposes a secret condition imposed upon Schroeder's use of his property. I therefore dissent in part as follows.

The majority has substantially stated the facts as found by the trial court and sustained by the evidence, except it failed to point out that after the Commission

---

8. Schroeder also challenges the constitutionality of Ind.Code § 36–7–4–921, which authorizes the BZA to permit or require the owner of property to make a written commitment. However, Schroeder did not seek declaratory relief challenging the validity of the statute or raise the issue in his pleadings. Further, we agree with the Commission that we do not

have jurisdiction to declare the statute unconstitutional as Schroeder has failed to comply with Ind.Code § 34–14–1–11, which provides that "[i]f the ... ordinance ... is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard."

moved to vacate the compliance hearing in May, 1996, asserting that Schroeder was in substantial compliance with applicable zoning ordinances, and the case was deemed disposed of by the court, Schroeder expended substantial monies on the improvement of the property.

The facts found established that Schroeder had no actual knowledge of the terms of the variance; the variance was never recorded and was not revealed in the title search; direct inquiry to the Commission resulted in Schroeder being told there was no variance affecting his use;[9] despite numerous visits by the zoning inspector when cars were parked outside, the only action prior to December, 1997, concerned the use of barbed wire and resulted in the substantial compliance dismissal; and even the attachment of the variance on the "obscured second page" of the "relevant" variance map did not disclose the variance condition. Moreover, the facts found sustain the court's finding that the Commissions actions and inactions misled Schroeder.

I agree with the majority that laches is not available as a defense against the government. *See, Hannon v. Met. Dev. Comm.* 685 N.E.2d 1075, 1080 (Ind.Ct.App. 1997).

On the other hand, the majority recognizes that equitable estoppel may apply if the party asserting the estoppel acted in reliance upon affirmative action taken by the government and if the public interest would be threatened by the government's conduct. The court in *Hannon* said the same thing. 685 N.E.2d at 1080.

Here it cannot seriously be doubted that Schroeder acted to his detriment in reliance upon the Commission's affirmative actions. The majority, however, summarily determines that no threat to public interest is posed by enforcement. I disagree. The fundamental distinction that I find between this case and the host of zoning cases that refuse to apply equitable estoppel is that this case involves not the government's application of a duly enacted zoning ordinance, but its attempted application of conditions imposed in what to all intents and purposes amounts to an undiscovered and undiscoverable variance granted to the terms of a zoning ordinance. I would venture to say that there is substantial public interest in requiring government to make readily available to owners of private property any governmental restrictions on the use of that property, and conversely, there is substantial public interest in preventing government from using secret restrictions to punish landowners and deny them otherwise proper uses of their land.[10] Accordingly, I would find the Commission equitably estopped from asserting the one car limitation contained in the variance.

My reasoning, however, does not preclude enforcement of the limitation imposed in the zoning ordinance, itself. That is, the limitation against storing inoperable, damaged or wrecked vehicles, other than those awaiting immediate repair. Schroeder was bound to know of these restrictions as they were available to all.

I concur in the majority's disposition of the other legal issues presented.

I would therefore affirm the trial court's determination that the one car limitation imposed in the variance cannot be applied to Schroeder and would otherwise reverse

9. Interestingly enough only the Commissions' letter to the prior owners' attorney referred to the property as located at 4989 S. Meridian St. Schroeder knew it only by its commonly known address as 50 E. Thompson Rd. The petition for the variance had stated its location as the northeast corner of the intersection of State Road 135 and Thompson Road.

10. I do not imply that in this case the government intentionally hid the condition. Instead, it appears likely that the conditions were so hidden from view that the government agents did not know of them either. Such lack of intent does not alter the public interest question.

and remind for such further proceedings as may be necessary.