STORY BED & BREAKFAST, LLP, Appellant–Plaintiff,

v.

BROWN COUNTY AREA PLAN COMMISSION, Appellee– Defendant,

and

Patricia N. March, Intervener– Defendant.

No. 07A01–0206–CV–201.

Court of Appeals of Indiana.

May 21, 2003.

Steven K. Emery, Holly M. Harvey, Bunger & Robertson, Bloomington, IN, Attorneys for Appellant.

David B. Schilling, Bloomington, IN, Attorney for Brown County Area Plan Commission.

Michael A. Mullett, Mullett & Associates Indianapolis, IN, Attorney for Patricia N. March.

## OPINION

MATHIAS, Judge.

Story Bed & Breakfast, L.L.P. ("Story") filed a petition for declaratory judgment

pursuant to Indiana Code section 34–14–1–1,[1] seeking to preclude the Brown County Area Plan Commission ("Plan Commission") from enforcing land use restrictions imposed by the planned unit development ("PUD") district ordinance governing real property owned by Story.[2] The Plan Commission counterclaimed, seeking a declaratory judgment that the Story property is subject to PUD land use restrictions and that Story's use of the property violates those restrictions.

The parties present the following restated issues for review:

I. Whether land use restrictions termed "covenants," attached to the Story property PUD and found in the Brown County Zoning Ordinance ("Zoning Ordinance"), are commitments or conditions;

II. Whether the Zoning Ordinance requires PUD covenants to be recorded; and

III. Whether Story's prior knowledge of the Story property PUD renders any potential recording requirement moot.

We conclude that the characterization of the Story property covenants as either a "condition" or a "commitment" to be unhelpful and instead characterize the covenants as "land use restrictions," which we determine must be recorded or otherwise memorialized in a manner reasonably calculated to provide notice to a subsequent bona fide purchaser of real property ("BFP"). We also conclude that the Zoning Ordinance requires PUD land use restrictions to be recorded before they may be asserted against a BFP. Finally, we conclude that Story's prior knowledge of the Story property PUD does not negate the need for recording. Accordingly, we affirm in part and reverse in part.

**Facts and Procedural History**

On August 3, 1999, Story acquired an interest in twenty-two acres of real property adjacent to the intersection of State Road 135 and Elkinsville Road in Brown County, which it now uses to operate the "Story Inn" and several bed and breakfast units. Richard Hofstetter ("Hofstetter") and Frank Mueller ("Mueller") each own a fifty percent interest in Story. The Plan Commission is the local agency responsible for administering the Zoning Ordinance.

■ The Plan Commission designated the Story property "PUD" in 1986, pursuant to petition 86–PUD–2A.[3] 86–PUD–2A was filed by Story Group, Inc. ("Story Group"), a predecessor in interest to the Story property. Appellant's App. pp. 110–13. 86–PUD–2A included a site plan that described the Story property's existing buildings, proposed buildings, and the planned uses of those buildings. *See* Appellees and Cross–Appellants' Supp.App. p. 5.

On May 30, 1986, the Plan Commission held a work session regarding 86–PUD–

---

1. Ind.Code § 34–14–1–1 (1999).

2. Patricia N. March, the owner of real property adjacent to Story property, intervened on behalf of the Plan Commission.

3. A PUD is a zoning district in which a planned mix of residential, commercial, and even industrial use is sanctioned subject to restrictions calculated to achieve compatible and efficient use of the land. 2 Anderson, The American Law of Zoning 4d § 11.12 (1986). Such a district is commonly approved where a large tract of land is owned by a developer capable of insuring the improvement of the entire area within the guidelines established by the municipality. *Id.* The PUD process enables an owner of a tract of land to negotiate with the municipality regarding the manner in which the land will be developed. *T.W. Thom Constr., Inc. v. City of Jeffersonville,* 721 N.E.2d 319, 326–27 (Ind.Ct. App.1999).

2A, with interested local property owners, Story Group, and Plan Commission members in attendance. In this session the Plan Commission imposed a list of land use restrictions, denominated as "covenants," to 86–PUD–2A. These restrictions, which are reflected in the written minutes of the work session, include no outside audio equipment or speakers, no outside lighting after 10:00 p.m., no overnight camping, no excess noise or lighting, and compliance with the general PUD site plan. Appellant's App. p. 124.

The Plan Commission issued primary approval of 86–PUD–2A on June 24, 1986, subject to the above mentioned covenants. Subsequently, the Brown County Board of Commissioners approved 86–PUD–2A. Neither the covenants nor the PUD designation pursuant to 86–PUD–2A were recorded. Br. of Appellee and Cross–Appellant at 4.

In 1992, Story Group sought approval for a second PUD for a twelve-acre addition to the Story property under petition 92–PUD–2, and the review and approval process proceeded in much the same fashion as that of 86–PUD–2A. On June 23, 1992, the Plan Commission granted primary approval of 92–PUD–2, subject to a list of covenants similar to those attached to 86–PUD–2A. Appellant's App. pp. 131–32. The Board of Commissioners granted primary approval of 92–PUD–2 on July 6, 1992. By September 8, 1992, both the Plan Commission and the Board of Commissioners granted secondary approval of 92–PUD–2. As with 86–PUD–2A, neither the covenants nor the PUD designation pursuant to 92–PUD–2 were recorded, and the only written evidence of the covenants

attached to either Story property PUD is found in the files of Plan Commission and Board of Commissioners records. Br. of Appellee and Cross–Appellant at 4.

Prior to its purchase of the Story property, Story hired a third party to conduct a title search. Not surprisingly, this search did not disclose any restrictions affecting the use of the Story property. However, before Story acquired the property, Hofstetter met with Doug Harden of Miller Architects in April of 1999. During a conversation concerning the installation of a septic system, Doug Harden informed Hofstetter of Story property's PUD designation, but said nothing of the land use restrictions included in the Story property PUD.

On September 20, 1999, after Story had invested over $100,000 to improve the Story property[4] and had conducted musical festivals on the property, Brown County employee Dan Harden advised Hofstetter that a Story property neighbor had filed a noise complaint against Story and had questioned Story's use of the "Old Mill Building" as a bar and grill.[5] Consequently, Hofstetter wrote Plan Commission Director Joan Wright ("Wright") stating:

> Until this morning, [Mueller] and I were unaware of any noise restrictions imposed by the Planning Commission. These restrictions, as you know, were enacted on May 30, 1986. The Bank never furnished us with the list of these restrictions. As a lawyer, I know that ignorance of the law is no excuse, and I apologize for any disturbance to neighbors as a result of the Gospel singers.

---

**4.** It is not immediately apparent from the record how much Story spent, or what obligations Story undertook, in acquiring the Story property.

**5.** Prior to this date, Dan Harden officially inspected the "Old Mill Bar and Grill" and made no mention that the use of the "Old Mill Building" as a bar and grill was restricted by covenants attached to a PUD. Appellants App. p. 206.

If you will furnish me with a list of those who complained, I will apologize personally. Please know that we were acting in good faith in bringing in the Gospel singers, and we will abide by the 1986 restrictions in the future, now that we know about them.

Dan [Harden] had some questions about the Old Mill Grill, which, apparently, was not specifically designated as a food and beverage service area in the PUD (though it was designated for retail). We do not believe that this should be a cause for concern at your office.

Tr. pp. 221–22. Wright responded to Hofstetter by letter, dated September 24, 1999, which states:

I encourage you to become familiar with the conditions imposed upon the development of Story Inn through the Planned Unit Development that was approved for it in 1986 and 1992. This knowledge will assist you in the future responsible management of the development, and enable us to help you more effectively. It is the responsibility of our office to enforce the [Zoning Ordiance]; this PUD is considered rezoning and, thus, part of the ordinance. I have enclosed a copy of our enforcement authority.

The PUD does not permit use of the Mill building as a bar and grill. It is designated as a "shop/Office/B & B unit" and any other use of the building violates the terms of the PUD. Further, any use of or on the property which is not specified in the PUD violates the conditions for approval. If you decide to use the property in ways that are not allowed by the PUD, this office will take action under Chapter 4 of the [Zoning Ordinance].

Appellee's App. p. 1. Hofstetter subsequently visited the Plan Commission office and reviewed the Story property PUD approval records, and after becoming aware of the Story property PUD covenants, he and Mueller invested an additional $300,000 in the Story property.

Despite Hofstetter's statement that Story would abide by the Story property PUD covenants, Story proceeded to conduct additional outdoor musical festivals. During these festivals, live musical acts, which lasted until roughly midnight, performed using amplified music and outdoor lights. The music of these festivals could be heard by at least one neighboring property owner. Consequently, owners of neighboring property registered complaints with the Plan Commission. When asked about the festivals, Story informed the Plan Commission that it intended to conduct similar festivals in the future.

Story then brought this action, seeking a declaratory judgment that would preclude the Plan Commission from enforcing the unrecorded Story property land use restrictions. The Plan Commission moved for summary judgment on August 29, 2001, asserting that Story is subject to the land use restrictions imposed by the Story property PUD and that Story's use of the property violated those restrictions. Story filed its cross-motion for summary judgment on September 20, 2001. On March 12, 2002, the trial court issued its order granting in part and denying in part each motion. Consequently, Story moved for certification of the interlocutory order, which was granted by the trial court, and this Court accepted jurisdiction on July 30, 2002.

### Discussion and Decision

When reviewing a grant or denial of a motion for summary judgment, our standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Catt v. Bd. of Comm'rs,*

779 N.E.2d 1, 3 (Ind.2002) (citing *Ind. Univ. Med. Ctr. v. Logan,* 728 N.E.2d 855, 858 (Ind.2000)). Summary judgment is appropriate only where the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing *Corr v. Am. Family Ins.,* 767 N.E.2d 535, 537 (Ind.2002)). All facts and reasonable inferences drawn therefrom are construed in favor of the nonmoving party. *Id.*

## I. Conditions and Commitments

Neither "commitment" nor "condition" is defined by statute. Furthermore, our research failed to find any case law, from Indiana or elsewhere, that adequately defines either term. This omission creates ambiguities in (1) determining whether a given land use restriction is a condition or a commitment and (2) determining what form of notice is necessary to assert PUD land use restrictions against a subsequent BFP. For these reasons, throughout our decision, we choose to use the term "land use restriction" for any such zoning limitation upon land use.

When adopting a PUD district ordinance, a legislative body may allow or require an owner of real property to make a written "commitment" in the manner authorized under Indiana Code sections 36–7–4–614 [6] or 36–7–4–615.[7] Ind.Code § 36–7–4–1512(a)(3) (1997). Importantly, the terms of such an unrecorded commitment may only be asserted against a subsequent purchaser of real property if the purchaser had actual knowledge of the commitment. Ind.Code §§ 36–7–4–1512(a)(3), 36–7–4–614(f), and 36–7–4–615(c).

Indiana Code section 36–7–4–615 further provides that the local legislative body may specify: (1) the circumstances under which a commitment may be made, modified, or terminated, (2) the extent to which the plan commission may require or allow a written commitment, (3) the procedures governing the making, modification, or termination of a written commitment—including the creation, form, enforcement, and type of notice required. Ind.Code § 36–7–4–615(a)(2)(4). Also, it would seem from the meaning of the term "written commitment" that a commitment is both written and quasi-contractual.[8]

We have discovered neither statute nor case law indicating what is necessary to form the quasi-contractual relationship or what type of writing is necessary to consummate the agreement between the local legislative body and the property owner. Furthermore, neither the statute nor case law delineates the circumstances under which a commitment may be made, the extent to which a plan commission may allow or require a written commitment, or the circumstances governing the making of a commitment—including the creation, form, enforcement, and notice required. Rather, the statute expressly leaves all of these defining characteristics open to the discretion of the local legislative body.

With a like degree of unhelpfulness, "conditions" are not defined by Indiana Code chapter 36–7–4, and there is nothing in the chapter that indicates what is necessary for the legislature to impose a valid condition. Furthermore, unlike the statu-

---

**6.** Ind.Code § 36–7–4–614 (1997).

**7.** Ind.Code § 36–7–4–615 (1997).

**8.** Because a legislature may "require" a commitment, there is a strong legislative aspect to commitments, and it would be error to characterize commitments as entirely contractual—contracts must be entered into voluntarily. Yet, because commitment implies agreement, it would be error to characterize a commitment as entirely legislative—one does not "agree" to be subject to legislation.

tory structure for commitments, there is no indication of what is required to give a subsequent BFP of land adequate notice of the restriction.

Distilled to its essence, because commitments may be "required" by the legislative body and conditions may be "imposed" by the legislative body, the respective legislative processes that produce conditions and commitments are similar, if not identical, to one another.[9] Ind.Code § 36–7–4–1512. Complicating this issue further, negotiation between the property owner and the legislative body is inherent to the PUD process. *See T.W. Thom Constr. Inc. v. City of Jeffersonville,* 721 N.E.2d 319, 326–27 (Ind.Ct.App.1999). Thus, because the underlying agreement of a commitment can be "required" by the legislature (making the "requirement" of a commitment look similar to the "imposition" of a condition) and the legislative process underlying a condition is the product of negotiation (making the agreement process of a condition look similar to the agreement process of a commitment), it is not clear how a court should distinguish a condition from a commitment, other than the requirement of recording a commitment in writing.

However, there are problems with distinguishing a "commitment" from a "condition" on the existence of a writing. First, the statute does not specify what form the writing should take. *See* Ind.Code § 36–7–4–1512. Because negotiation is inherent to the PUD process, written promises are a matter of course. Thus, it would be difficult to determine whether a particular writing was a by-product of negotiation or representative of an intention to make a commitment. Second, if we adopt such a distinction, the property owner would be able to, intentionally or unintentionally,

transform a condition into a commitment by simply making a written promise to abide by the land use restrictions contained in the PUD. The third, and most troubling, problem is that such a distinction creates form without substance—in other words, if a writing is the only method of distinguishing a commitment from a condition, the condition's absence of a recording requirement is necessarily arbitrarily or capriciously imposed by the parties' decision to commit their agreement to writing, thereby creating a commitment.

Finally, we find it unpersuasive that a land use restriction can be labeled a condition simply by locating the restriction on the face of the PUD ordinance. Indiana Code section 36–7–4–1503 states that PUD district ordinances must "specify development requirements." Ind.Code § 36–7–4–1503(3) (1997). If a condition is a restriction found on the face of a zoning ordinance, we believe that the legislature would have opted to use the term "condition" in Indiana Code section 36–7–4–1503 rather than "development requirements." Also, the unorthodox nature of PUD ordinances makes it difficult to determine what constitutes the face of the ordinance.

For all of these reasons, we find that making the characterization of a land use restriction as a "commitment" or "condition" dispositive in a dispute is singularly unhelpful. We believe that, rather than attempting to determine whether a land use restriction is a condition or a commitment, a court should instead focus on whether a subsequent BFP was given sufficient notice to negate the common law right to the unrestricted use of his or her land.

**9.** This fact is accentuated when the very wide latitude afforded the legislative body in making commitments and the statutory silence concerning the imposition of conditions are considered in combination with one another.

## A. The notice required for PUD land use restrictions

■ Metro. Dev. Comm'n of Marion County v. Schroeder, 727 N.E.2d 742, 752–56 (Ind.Ct.App.2000), upheld the imposition of unrecorded conditions attached to a use variance. In upholding the conditions, Schroeder confined its discussion to determining whether equitable estoppel (arising from plan commission actions subsequent to the adoption of the conditions), regulatory taking without just compensation, unreasonableness of the actual terms of the conditions, or equal protection precluded the enforcement of conditions. Id. Noticeably absent from this holding is any discussion concerning the subsequent purchaser's lack of notice resulting from the plan commission's failure to record the conditions.

Senior Judge Garrard dissented on the ground that he considered the unrecorded use variance conditions to be "for all intents and purposes a secret condition imposed upon Schroeder's use of his property." Id. at 756. Judge Garrard further stated "[t]he facts found established that Schroeder had no actual knowledge of the terms of the variance; the variance was not recorded and was not revealed in the title search." Id. at 757. Due to Schroeder's lack of knowledge concerning the unrecorded conditions and the subsequent reliance-inducing actions of the plan commission, Judge Garrard's dissent indicated that the plan commission should have been equitably estopped from enforcing the conditions of the use variance. Id.

Although we concur with the majority holding in Schroeder, we share Judge Garrard's concern for the effect that unrecorded conditions have upon a landowner who purchases property without a reasonable opportunity to obtain knowledge of the land use restrictions. We are troubled that a property owner's common law right to the unrestricted use of his or her property might be encumbered by a condition only discoverable through a search of the minutes of a plan commission meeting. This is further troubling when considered in combination with the fact that the conditions that the subsequent landowner would be required to look for may not even exist. We believe that a prospective BFP, who may or may not know or have reason to know of conditions in the first place, is not likely to possess the necessary specialized knowledge of the parochial filing practices of an individual county, like Brown County in the present case, and is therefore unlikely to have adequate notice of such land use restrictions unless they are recorded or otherwise memorialized in a manner calculated to provide the BFP notice of the land use restriction.[10]

---

10. The Commission cites South Creek Assocs. v. Bixby & Assocs., Inc., 781 P.2d 1027, 1033 (Colo.1989), in support of the argument that conditions found only in the minutes of plan commission meetings do not need to be recorded. Reply Br. of Cross Appellant at 8. In Bixby, the Colorado Supreme Court enforced an unrecorded condition against a subsequent purchaser who was without knowledge of the condition. 781 P.2d at 1033.

We decline to apply Bixby to the case at bar. In Bixby, the PUD itself was not only recorded but the recording stated that it was "approved with conditions on December 1, 1977." Id. at 1028. This recorded information gave the subsequent purchaser in Bixby considerable notice to discover the condition attached to the PUD—notice that was not available in the current case. Also, the unrecorded condition in Bixby merely cost the subsequent property owners the right to the exclusive use a portion of their parking lot. Id. at 1028. Thus, the enforcement of the condition in Bixby was much more palatable than in an instance where a subsequent landowners' investment of a considerable amount of money is rendered useless. We also respectfully disagree with the decision reached by the Colorado Supreme Court because we are very uncomfortable with a rule of law that

*Schroeder* states, "[c]onditions or restrictions must be clearly stated so that the landowner and his neighbors are not left in doubt as to the nature and extent of the uses permitted." *Id.* at 754 (citing *Schlehuser v. City of Seymour*, 674 N.E.2d 1009, 1014 (Ind.Ct.App.1996)). We find it inconsistent that Indiana law requires the terms of conditions to be stated with sufficient clarity as to inform the property owner of the nature of the restrictions inhibiting the use of his or her property and yet would require property owners to search through years of plan commission records for unrecorded land use restrictions outside the recorded chain of title.

We concede that the legislature can, and does, regularly affect a landowner's property use by means of restrictions contained in ordinances. In these instances, and as a matter of law, the ordinance itself supplies the notice that is otherwise provided by recording. However, we find that a legislative act or condition that is buried in plan commission records or not otherwise memorialized in a manner reasonably calculated to provide a BFP notice of a land use restriction resulting from a PUD, provides insufficient notice to subsequent BFPs of the affected real property.

In the present case, the trial court attempted to determine whether the covenants attached to the Story property PUD were commitments or conditions based upon the language of the covenants.[11] Appellant's App. pp. 23–26. Given the ambiguities surrounding the meanings of "conditions" and "commitments," the trial court's attempt was valiant. Nonetheless,

we hold that land use restrictions, however denominated, and which result from the PUD negotiation process, should be recorded or otherwise memorialized in a manner reasonably calculated to provide notice to a subsequent purchaser of land. We further hold that the location of such land use restrictions in the minutes of Plan Commission meetings was insufficient to adequately put Story, as a subsequent BFP, on notice of the restrictions contained therein.

**B.** *The Brown County Zoning Ordinance and covenants*

■ Interpretation of a zoning ordinance is a question of law. *Discovery House v. Metro. Bd. of Zoning Appeals*, 701 N.E.2d 577, 579 (Ind.Ct.App.1998) (citing *Barnes v. City of Anderson*, 642 N.E.2d 1004, 1006 (Ind.Ct.App.1994)). When we interpret the language of a zoning ordinance, we follow the ordinary rules of statutory construction. *Johnson Oil Co., v. Area Plan Comm'n of Evansville and Vanderburgh County*, 715 N.E.2d 1011, 1015 (Ind.Ct.App.1999) (citing *Columbus Bd. of Zoning Appeals v. Big Blue*, 605 N.E.2d 188, 191 (Ind.Ct.App. 1992)). We interpret the ordinance as a whole and give its words their plain, ordinary, and usual meaning. *Id.* All language is deemed to have been used intentionally. *Preston v. State*, 735 N.E.2d 330, 333 (Ind. Ct.App.2000). However, zoning regulations, which inhibit the use of real property, are in derogation of the common law and are to be strictly construed. *Discovery House*, 701 N.E.2d at 579.

---

would allow a land use restriction, which can only be found in the files of the plan commission office, to deprive a landowner of the common law right to the unencumbered use of his or her property—especially when the property owner may have invested a considerable amount of money in reliance on record notice.

**11.** We find it entirely probable that the drafters of the Zoning Ordinance termed the PUD land use restrictions "covenants" rather than "conditions" or "commitments" because they too were unsure of the definition of conditions and commitments.

Brown County Zoning Ordinance sections 21(C)(2)(3) and 21(F)(3) state that covenants may be recorded, and the Zoning Ordinance refers to covenants without mentioning recording in section 21(F)(1). Appellee's App. pp. 91–96. Thus, it is apparent, from the Zoning Ordinance's use of "may" and the absence of recording language in section 21(F)(1), that the Zoning Ordinance does not require covenants to be recorded.

■ However, as with Indiana Code chapter 36–7–4's treatment of conditions, the Zoning Ordinance fails to define covenants, and we find that the Zoning Ordinance's inclusion of a recording option speaks to the enforceability limitations regarding covenants. The purpose of recording a land use restriction is to give a subsequent BFP notice of the restriction so the land use restriction may be enforced against that subsequent purchaser. Thus, the Zoning Ordinance's inclusion of an option to record the undefined covenants indicates that a covenant, standing alone without having been recorded, may not be asserted against a subsequent BFP who is without knowledge of the covenant's existence.[12]

## II. Story's Knowledge of the Story Property PUD

The Plan Commission contends that even if its land use restrictions should have been recorded, such a requirement was rendered moot by Story's prior knowledge of the Story property PUD. Reply Br. of Cross–Appellant at 14. The Plan Commission notes that it is undisputed that Hofstetter was informed of Story property's PUD designation during a meeting between Hofstetter and Miller Architects three months prior to Hofstetter's purchase of the Story property. Id. at 13. However, the Plan Commission does not deny that Hofstetter's knowledge did not extend to the covenants attached to the Story property PUD approval. Br. of Appellee and Cross–Appellant at 4.

Having knowledge of a PUD designation is not the same thing as having knowledge of the land use restrictions attached to it. When property is zoned PUD, there may or may not be attendant land use restrictions attached to the property. Consequently, causing a property owner's knowledge of a PUD designation to constitute constructive notice of unrecorded or otherwise inadequately memorialized land use restrictions, would require such an owner to review years of plan commission records

12. The Plan Commission asserts that *Lynn v. Windridge Co-Owners Ass'n. Inc.*, 743 N.E.2d 305, 310–11 (Ind.Ct.App.2001), holds that for the non-recording of a covenant to negate the covenant's effectiveness, a statute must expressly condition the validity of the covenant on recording. Reply Br. of Appellants and Cross–Appellants at 27–28. Therefore, according to the Plan Commission, even if Indiana law and the Zoning Ordinance require the Story property covenants to be recorded, the covenants must still be enforced because neither the statute nor the Zoning Ordinance expressly condition the validity of covenants on recording.

*Lynn* is distinguishable on several grounds. First, *Lynn* does not involve a subsequent BFP like Story, but rather an original condo-

minium owner who had clear actual notice of the association's right to assess additional maintenance fees to owners based on increased condominium size. *See* Tr. p. 1005 of *Lynn*, 743 N.E.2d 305. As we hold in the present case, the critical concept is notice, which was satisfied in *Lynn*. Second, *Lynn* is set against the backdrop of Indiana's Horizontal Property Law ("HPL"). The HPL, with its specific definitions and regulation of condominium owners' interests stands in stark contrast to the ill-and un-defined concepts of "commitments" and "conditions" in the case before us. The HPL structure also explains and countenances *Lynn's* rationale of *expressio unius exlusio alterius* concerning the recording requirement at issue there, a structure not even approached here.

for information that may or may not exist. We believe this is an unreasonable undertaking that is not adequately ameliorated by vague expectations of accurate and timely advice from associated government land use employees on a county-by-county basis.

The Plan Commission also asserts that Hofstetter's status as an attorney should have prompted him to search the Plan Commission records upon learning of the Story property PUD designation. We find two problems with this assertion. First, attorney Hofstetter, or any lay person, should be able to assume that if there was a limit on his common law right to the unrestricted use of his land, that restriction would have been recorded or memorialized in a manner reasonably calculated to provide him notice of the restriction—not buried in the minutes of Plan Commission meetings. Second, we find that it is far more appropriate for the Plan Commission to record the Story property PUD and its covenants than for attorney Hofstetter, or any layperson, to peruse the minutes of Plan Commission meetings looking for restrictions that may or may not exist.

For all of these reasons, we find Story's knowledge of the Story property PUD designation insufficient to remedy the Commission's failure to record the land use restrictions at issue.

### Conclusion

For purposes of PUD land use restrictions, the designation of "condition" or "commitment" is unhelpful. Consequently, we require all PUD land use restrictions, however denominated, to be either recorded or memorialized in a manner reasonably calculated to give notice to subsequent BFPs before such restrictions may

be asserted against a subsequent BFP. We determine that the location of the Story property land use restrictions in the minutes of Plan Commission meetings was insufficient to give Story such notice. We also determine that the Zoning Ordinance requires PUD covenants to be recorded before they may be asserted against a subsequent BFP. Finally, we conclude Story's knowledge of the Story property PUD designation insufficient as a matter of law to provide adequate notice of the land use restrictions at issue.[13]

Accordingly, we affirm in part and reverse in part.

BAKER, J., and RILEY, J., concur.

---

**13.** Because we conclude that Story has an adequate remedy at law, we need not address Story's equitable estoppel argument or whether it is undisputed that Story's actions violated the Story property PUD covenants.