**BOARD OF ZONING APPEALS, CITY OF VALPARAISO, Indiana, Appellant (Plaintiff Below),**

v.

**BETA TAU HOUSING CORPORATION, Appellee (Defendant Below).**

No. 4–1185A318.

Court of Appeals of Indiana, Fourth District.

Nov. 10, 1986.

Lily M. Schaefer, Valparaiso, for appellant.

William H. Wagner, John E. Hughes, Katharine E. Gerken, Valparaiso, for appellee.

YOUNG, Judge.

The Board of Zoning Appeals of the City of Valparaiso appeals a negative judgment in an action to enjoin Beta Tau Housing Corporation from operating a fraternity house. The board claims the trial court erred in:

1) overruling the board's motion to strike Beta Tau's affirmative defenses and admitting evidence on such affirmative defenses;

2) finding the board was barred by laches and estoppel from enforcing the zoning ordinance against Beta Tau; and

3) finding Beta Tau's use of its real estate to be a nonconforming use.

We affirm.

Beta Tau Housing Corporation owns and holds property for use by Sigma Pi Fraternity, Beta Tau Chapter. In 1971, Beta Tau purchased real property at 805 Brown Street intending to operate a fraternity house there. The property is located in an R–3 residential zone, which would permit a boarding house to operate on an arterial street upon application for and approval as a special exception. Beta Tau purchased the adjoining property at 803 Brown Street in 1974.

In 1971, Beta Tau sought a variance from the minimum rear yard setback requirements. The variance was denied on the basis that due to the size of the lot, no variance from setback requirements was necessary. Beta Tau therefore continued with its plans, and began operating its fraternity from the Brown Street property in 1972.

In 1973, Beta Tau had plans prepared to replace the existing house with a new building. The architect suggested that a variance from parking requirements might be necessary. Beta Tau contacted the zoning administrator's office about the parking variance. Since the zoning administrator was on vacation, the city engineer handled the matter. He informed Beta Tau there was very little chance that a parking variance would be granted.

In 1974, Beta Tau decided to forego a new structure and made plans instead to remodel the existing property on 805 Brown Street. Beta Tau contacted the zoning administrator who advised that a building permit would not be needed since no major structural changes were contemplated. Beta Tau thereafter completed the remodeling of 805 Brown Street, expending more than $15,000.00.

In 1980, city zoning officials notified Beta Tau of a possible zoning violation at its 803 and 805 Brown Street properties.

No enforcement action was brought at that time. In April of 1983, Beta Tau sought a variance from the zoning requirement that a fraternity be located on an arterial street and a special exception for use of 803 and 805 Brown Street as a fraternity. Beta Tau also argued that the city was barred by laches and equitable estoppel from enforcing the ordinance. At the public hearing on May 17, 1983, both the variance and special exception were denied. Since the city was in the process of designing a new R–14 district for fraternity houses, which district might include the Brown Street properties, the board of Zoning Appeals stipulated that Beta Tau could continue to operate a fraternity house at the Brown Street location until September 1, 1984. No appeal was taken.

Ultimately, the R–14 district did not encompass the Brown Street properties. Beta Tau continues to operate a fraternity house there. On March 13, 1985, the board filed suit to enjoin Beta Tau from such operation.

The board first claims that the trial court erred in overruling its motion to strike Beta Tau's affirmative defenses of laches, waiver and estoppel. The board argues that these affirmative defenses were raised in the 1983 hearing on Beta Tau's applications for a variance and special exception. Since Beta Tau did not appeal the denial of these applications, the board claims Beta Tau is barred, under the doctrine of res judicata, from raising these affirmative defenses.

■ This argument is without merit. The May 1983 ruling merely established that Beta Tau was not entitled to a variance or special exception under the criteria of the zoning ordinance. The affirmative defenses raised by Beta Tau had no bearing on its entitlement to a variance or special exception according to the ordinance. They relate only to the issue of Beta Tau's possible violation of the zoning ordinance, the matter at issue in the present case. *See Metropolitan Development Commission of Marion County v. I. Ching, Inc.* (1984), Ind.App., 460 N.E.2d 1236. There-

fore, the issues raised by the affirmative defenses were not litigated in the 1983 hearing and are not res judicata. The trial court did not err in denying the board's motion to strike or in allowing Beta Tau to introduce evidence relating to these affirmative defenses.

Next, the board claims the evidence was insufficient to support the affirmative defenses of laches and estoppel. Our holding on the laches issue makes it unnecessary to discuss equitable estoppel.

■ In order to establish laches, Beta Tau had to show the following elements: 1) inexcusable delay in asserting a right; 2) implied waiver from knowing acquiescence in existing conditions; and 3) prejudice to the defendant due to the delay. *Siddall v. City of Michigan City* (1985), Ind.App., 485 N.E.2d 912, 916; *Alber v. Standard Heating & Air Conditioning, Inc.* (1985), Ind. App., 476 N.E.2d 507, 509. We will reverse the trial court's judgment only where the evidence is without conflict and leads to but one conclusion different from that reached by the trial court. *Washington National Corp. v. Sears, Roebuck & Co.* (1985), Ind.App., 474 N.E.2d 116, 119.

■ There was sufficient evidence to support all three elements of laches in this case. The board was aware of Beta Tau's intent to use the Brown Street property as a fraternity house in 1971, when Beta Tau applied for a variance from minimum rear lot requirements. Beta Tau's application for the variance clearly stated the name of the applicant as Sigma Pi Fraternity. (R. 161) In addition, the minutes from the board meeting on Beta Tau's application further indicate that the board knew it was dealing with a fraternity; the name of Sigma Pi Fraternity is mentioned twice. The minutes also indicate the board was provided a sketch of the property and proposed building. Nevertheless, the board merely denied the variance because it determined a variance was unnecessary; the board failed to indicate to the fraternity that its proposed use would violate the ordinance and that a special exception would be needed.

Furthermore, the zoning administrator was alerted regarding Beta Tau's use of the property as a fraternity in 1974 when he was asked whether a building permit would be required for remodeling the fraternity house. Doug Jones testified that, although he explained to the administrator that he was a member of Sigma Pi Fraternity and that Sigma Pi wished to remodel its building, the administrator neither mentioned any zoning problems nor inquired as to whether a special exception had been granted to the fraternity.

Despite their awareness, neither the administrator nor the board contacted Beta Tau regarding a zoning violation until 1980. They then waited until 1983 to file an enforcement action.

The delay of approximately a decade is inexcusable given the opportunities the board and administrator had to approach Beta Tau regarding the problem and given the administrator's testimony that it is his duty to rectify zoning problems in the most expedient manner. (R. 86) In addition, the board and administrator's knowledge of Beta Tau's use of the property and their dealings with it in 1971 and 1974 indicate they acquiesced in its use of the property.

Finally, the resulting prejudice to Beta Tau is obvious, given the fact it expended large sums of money for remodeling. The sums were expended in direct response to the administrator's determination that a building permit was not needed to do the remodeling. Had the administrator at that time (or the board in 1971) informed Beta Tau of the problem, such expenditures would have been made at Beta Tau's peril. Because of the delay, however, Beta Tau has now changed its position, and to enjoin its use of the property would put the fraternity in a precarious position.[1] Therefore, the trial court was correct in finding that the board was barred by laches from enforcing the zoning ordinance against Beta Tau.

The board claims the trial court erred in determining that Beta Tau's use of the property constitutes a nonconforming use. A nonconforming use is one which would be prohibited under a current zoning ordinance, but is permitted because it was legal on the date of the adoption of the ordinance. *Metropolitan Development Commission of Marion County v. Marianos* (1980), 274 Ind. 67, 408 N.E.2d 1267. Our holding on the issue of laches, however, renders harmless any error which may have occurred on this issue.[2]

The trial court's judgment is affirmed.

CONOVER, P.J., and MILLER, J., concur.

---

1. We are unpersuaded by the board's argument that Beta Tau was not prejudiced because the remodeling enhanced the value of the property and Beta Tau could therefore sell it. The record indicates that Beta Tau's recent efforts to find suitable property for relocation have been futile, and that an injunction against Beta Tau could seriously jeopardize the fraternity's future existence.

2. Beta Tau also claims the trial court's judgment may be upheld on the basis that the board discriminatorily enforced the zoning ordinance against Beta Tau in violation of Beta Tau's constitutional right to equal protection under the law. The trial court found that at least thirteen other fraternities appeared to be in violation of the zoning ordinance, yet the board has not contemplated action against them for such improper land use. Since we may uphold the trial court's judgment on the basis of laches, we need not reach the constitutional issue.