STEUBEN COUNTY; F. Mayo Sanders, Dale Hughes, Jr. and Rodney Wells, In Their Capacity as Members of the Steuben County Board of Commissioners; Steuben County Plan Commission; James A. Crowl, Ronald Dodd, Paul Friend, Larry Gilbert, Dale Hughes, Jr., August Bud Kurtz, Nancy Vail–Mattingly, John McLaughlin, and Delbert Shultz, In Their Capacities as Members of the Steuben County Plan Commission; Steuben County Board of Zoning Appeals; William Bryan, Ronald Dodd, Thomas Hanselman, Willis Ingledue, August Bud Kurtz, In Their Capacities as Members of the Steuben County Board of Zoning Appeals; Phillip K. Meyers, In His Capacity as Steuben County Zoning Administrator; and June Fee Haskins and Patricia Hakes on Behalf of the Waste Watchers, Inc. as Their Interests May Appear, Appellants–Defendants,

v.

FAMILY DEVELOPMENT, LTD., Appellee–Plaintiff.

No. 76A04–0006–CV–259.

Court of Appeals of Indiana.

July 31, 2001.

Rehearing Denied October 2, 2001.

Phillip S. Renz, Diana C. Bauer, Miller Carson Boxberger & Murphy, Fort Wayne, IN, Attorneys for Appellants.

Lawrence A. Vanore, Sommer & Barnard, Indianapolis, IN, James P. McCan-

na, Auburn, IN, Attorneys for Steuben County Waste Watchers.

James P. Fenton, Alan VerPlanck, Eilbacher Scott, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Chief Judge.

June Fee Haskins and Colleen Hake,[1] on behalf of Steuben County Waste Watchers, Inc. (collectively, "Waste Watchers"), and several Steuben County elected officials and government agencies (collectively, "Steuben County"),[2] appeal the trial court's grant of Family Development, Ltd.'s ("Family Development") motion for summary judgment and the trial court's denial of their respective motions for summary judgment. Waste Watchers and Steuben County each raise several issues,[3] which we consolidate and restate as:

1. whether the trial court abused its discretion when it granted Family Development's motion to strike portions of two affidavits submitted by Waste Watchers; and

2. whether the trial court erred when it granted Family Development's motion for summary judgment and denied Waste Watchers and Steuben County's motions for summary judgment.

We affirm in part, reverse in part, and remand with instructions.

The relevant facts follow. In 1975, Clarence Rowlinson owned eighty acres of land in Steuben County. On June 11, 1975, Rowlinson petitioned the BZA for a special exception to build a landfill on his property.[4] The BZA granted the request on July 7, 1975. Later that same year, Rowlinson leased approximately eighteen acres of his land to Peter Putnam, who constructed a landfill. Putnam operated the landfill until the Indiana Department of Environmental Management ("IDEM") closed the landfill in 1986.

On August 1, 1986, Rowlinson conveyed the rest of his property, consisting of approximately sixty-two acres, to National Serv–All, Inc. ("Serv–All"). Rowlinson retained ownership of the land that he had leased to Putnam. In 1989, Serv–All applied for a permit from IDEM to operate a landfill on its sixty-two acres. On May 23,

1. In its appellant's brief, Waste Watchers claims that appellant/defendant Patricia Hakes should be identified as Colleen Hake, and that "[t]he parties have agreed that Colleen Hake is the member of Waste Watchers that [Family Development] intended to name in its complaint." Waste Watchers' appellant's brief, p. 2 n. 1. Family Development does not dispute this statement in its appellee's brief.

2. Specifically, the Steuben County parties include: Steuben County; F. Mayo Sanders, Dale Hughes, Jr., and Rodney Wells, in their capacities as members of the Steuben County Board of Commissioners; the Steuben County Plan Commission; James A. Crowl, Ronald Dodd, Paul Friend, Larry Gilbert, Dale Hughes, Jr., August Bud Kurtz, Nancy Vail Mattingly, John McLaughlin, and Delbert Shultz, in their capacities as members of the Steuben County Plan Commission; the Steuben County Board of Zoning Appeals ("BZA"); William Bryan, Ronald Dodd, Thomas Hanselman, Willis Ingledue, and August Bud Kurtz, in their capacities as members of the Steuben County Board of Zoning Appeals; and Phillip K. Meyers, in his capacity as Steuben County Zoning Administrator.

3. Steuben County joins in the arguments raised by Waste Watchers. In addition, although Waste Watchers does not join in the arguments raised by Steuben County, Waste Watchers' arguments do not differ greatly from those of Steuben County.

4. As we discuss below, the parties dispute whether Rowlinson also applied for, and received, an improvement location permit ("ILP"). *See infra* Part II.B.

1997, while the permit application was pending, Serv–All, by its president, Gregory C. Walbridge, quitclaimed its interest in the property to Gregory C. Walbridge, G. Charles Walbridge, and Kevin C. Walbridge. On August 1, 1997, the Walbridges conveyed the property by warranty deed to Family Development.

Family Development has continued to pursue Serv–All's application to IDEM for a permit to operate a landfill on the sixty-two acres. However, Family Development has never applied to the BZA for a special exception or an ILP to construct and manage a landfill on its property. In addition, the proposed landfill has faced opposition in Steuben County. Waste Watchers is a not-for-profit corporation that is involved in environmental issues in Steuben County, and it has objected to the proposed landfill. Phillip K. Meyers, the Steuben County Plan Director and Zoning Administrator, also opposes the proposed landfill. On September 12, 1997, Meyers sent a letter to IDEM stating that Family Development did not possess a valid special exception to use its land as a landfill or an ILP permitting it to build the landfill. Meyers also related that, in his opinion, Family Development would be required to seek a new special exception and an ILP from the BZA to construct its landfill, and that the proposed landfill would have to meet current developmental standards, rather than the standards that were in effect in 1975, in order to obtain the BZA's approval.

On January 15, 1998, Family Development filed a complaint against Steuben County and Waste Watchers in the Steuben Circuit Court. Family Development requested a declaration that it possesses all of the necessary zoning approval to build the landfill, an injunction against further interference with Family Development's attempts to obtain IDEM's approval for the landfill, or, in the alternative, damages for an unlawful taking of its property. All three parties filed motions for summary judgment. Family Development also filed a motion to strike portions of two affidavits filed by Waste Watchers. On March 29, 2000, the trial court granted Family Development's motion for summary judgment and denied Steuben County and Waste Watchers' motions for summary judgment. The trial court also granted Family Development's motion to strike. Steuben County and Waste Watchers both filed motions to correct error, which the trial court denied. On June 16, 2000, pursuant to the parties' request, the trial court certified its summary judgment ruling as a final judgment.[5]

## I.

The first issue is whether the trial court abused its discretion when it granted Family Development's motion to strike portions of two affidavits submitted by Waste Watchers. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Richardson v. Calderon,* 713 N.E.2d 856, 860 (Ind.Ct.App. 1999), *reh'g denied, trans. denied.* We will reverse such an exercise of discretion only when the decision is clearly against the logic and effect of the facts and the circumstances. *Id.* Affidavits in support of or in opposition to a motion for summary judgment are governed by Ind. Trial Rule

---

**5.** In its summary judgment order, the trial court declined to rule upon any issues regarding damages, continuing those issues "to be reset if necessary." Record, p. 178.

In addition to the record of proceedings, the parties have submitted a supplemental record of proceedings. We shall refer to the original record as "Record," and we shall refer to the supplemental record as "Supp. Record."

56(E), which provides, in relevant part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

We will address each affidavit in turn.

### A.

■ The trial court struck the following paragraphs from the affidavit of appellant/defendant June Fee Haskins, who is a director of Waste Watchers:

6. A sanitary landfill was operated on that portion of the 80 acres not part of the Subject Real Estate, but was closed and its permit to operate revoked because of repeated violations of rules and regulations of [IDEM] and also of Steuben County Regulatory and Zoning authorities.

7. That landfill was never properly closed, and leachate from the site remains a serious threat to the area ecosystem, and is subject to a state and local commission investigating possible ways to clean up the site. That leachate stains the soil with which it comes into contact, carries a foul order [sic], and eventually goes into Black Creek.

8. Black Creek and its tributaries run along the north, west, and south sides of the site.

9. Black Creek runs directly into Hamilton Lake, which is only 2.5 miles from the site.

10. Many of the neighbors within the watershed and downstream from the Subject Real Estate have wells for domestic use less than 60 feet below ground level.

11. Surface water drainage from the Subject Real Estate drains primar-

ily to the south and into Black Creek, which in turn drains into Hamilton Lake.

\*     \*     \*     \*     \*     \*

13. There are two Amish schools, one about one-half mile south of the Subject Real Estate, and the other about one mile southeast of the Subject Real Estate, many of whose students travel by open buggy to and from school on the same roads accessing the Subject Real Estate.

Supp. Record, pp. 194–195.

As we discuss below, the primary issues debated by the parties are whether Family Development possesses a valid special exception and a valid ILP. *See infra* Part II. These issues focus on interpretation of the Steuben County zoning ordinance and other statutes. The paragraphs outlined above describe the environmental problems at Putnam's landfill and the nature of the land surrounding Family Development's property, which are not relevant to questions of statutory interpretation. Because those paragraphs are irrelevant to the issues in this case, the trial court did not abuse its discretion when it struck those paragraphs from Ms. Haskins' affidavit. *See Laudig v. Marion County Bd. of Voters Registration,* 585 N.E.2d 700, 709 (Ind.Ct.App.1992), *trans. denied.*

### B.

■ The trial court also struck the following paragraphs from defendant/appellant Phillip Meyers's affidavit:

4. To construct and operate a landfill in Steuben County at any time from the beginning of 1975 through the date hereof, an applicant must obtain a special exception, which will permit use as a landfill on a particular site, assuming that site has the

appropriate zoning, and further assuming the applicant meets or has met all other requirements of the Zoning Ordinance, and other federal, state, and local laws, rules and/or regulations.

\* \* \* \* \* \*

8. There is some question over whether the special exception for the subject real estate still is effective; but, for the purposes of this affidavit and the summary judgment motion of defendants which it supports, assuming that the special exception were still effective, no one, including plaintiff, could construct or operate a landfill on the subject real estate without meeting all of the other provisions of the Steuben County Zoning Ordinance. Those other provisions of the Steuben County Zoning Ordinance include, but are not limited to, an application for an [ILP] on a parcel of real estate sufficiently sized, and showing all construction with the appropriate setback requirements and other development and use standards met; and then issuance of a Certificate of Occupancy upon completion and confirmation of conformity of the construction with the Steuben County Zoning Ordinance.

\* \* \* \* \* \*

12. An agriculturally zoned parcel of real estate may have a sanitary landfill on it upon the proper granting of a special exception by the [BZA]. However, any improvements to the real estate must be constructed in accordance with the appropriate development and use standards in effect at the time of the construction. In particular, an applicant desiring to construct a landfill must apply for an [ILP] and a Certificate of Occupancy.

13. Applications for an [ILP] and a Certificate of Occupancy must meet the standard setback requirements of Chapter 4 of the Steuben County Zoning Ordinance in effect at the time of the filing of those applications.

14. If a property was properly in use under the Steuben County Zoning Ordinance, but does not comply under an amendment to the Zoning Ordinance later made, that use may continue as a 'nonconforming use' in accordance with the definitions section in Chapter 1 of the Steuben County Zoning Ordinance.

15. A property may be properly zoned for a particular use, but still be a 'nonconforming use' if it does not currently meet the development and use standards of the current Zoning Ordinance as amended.

Supp. Record, pp. 197–199.

■ Waste Watchers asserts that as the Plan Director and Zoning Administrator for Steuben County, Mr. Meyers "is merely doing his job by reciting the unambiguous zoning requirements that apply to the subject real estate." Waste Watchers appellant's brief, p. 29. Nevertheless, even experts are generally not permitted to testify as to legal conclusions. *Indianapolis Podiatry, P.C. v. Efroymson,* 720 N.E.2d 376, 383 (Ind.Ct.App.1999), *trans. denied.* The paragraphs outlined above are more than a description of what the Steuben County zoning ordinance provides. Instead, the paragraphs describe as a matter of law how an applicant may obtain approval for a landfill under the zoning ordinance, which is the focus of this case. Thus, the stricken paragraphs are conclusions of law, and they are improper in an affidavit. *See id.* at 384. As a result, the

trial court did not abuse its discretion in striking the challenged portions of the affidavits. *See id.* We affirm the judgment of the trial court on this issue.

## II.

The second issue is whether the trial court erred when it granted Family Development's motion for summary judgment and denied Waste Watchers and Steuben County's motions for summary judgment. When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court: we must consider all of the evidence in the light most favorable to the nonmoving party in order to determine whether a genuine issue of material fact remains for resolution by the trier of fact. *Ayres v. Indian Heights Volunteer Fire Dep't, Inc.,* 493 N.E.2d 1229, 1234 (Ind.1986). A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue. *Laudig,* 585 N.E.2d at 704. If we have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party, and we must reverse the entry of summary judgment. *Id.* However, if no genuine issue of material fact exists, and if the moving party is entitled to judgment as a matter of law, we must affirm the entry of summary judgment. *Id.* The fact that both parties requested summary judgment does not alter our standard of review. *Id.* Instead, we must separately consider each motion to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Id.*

In addition, where, as here, the trial court enters findings of fact and conclu-sions thereon, such findings and conclusions are not binding on this court, although they offer valuable insight into the trial court's rationale for its judgment and facilitate our review. *Golitko v. Indiana Dep't of Corr.,* 712 N.E.2d 13, 15 (Ind.Ct. App.1999), *trans. denied.*

In essence, Waste Watchers and Steuben County assert that the trial court erred when it granted Family Development's motion for summary judgment because Family Development is required to apply for a special exception and an ILP before constructing its landfill, which Family Development has not done. This claim raises a number of preliminary issues that must be resolved, and we shall address them separately.

## A.

▮▮▮▮ At the outset, Family Development contends that Steuben County is equitably estopped from requiring Family Development to petition for an ILP. Equitable estoppel applies if one party, through its representations or course of conduct, knowingly misleads or induces another party to believe and act upon his or her conduct in good faith and without knowledge of the facts. *Metro. Dev. Comm'n of Marion County v. Schroeder,* 727 N.E.2d 742, 752 (Ind.Ct.App.2000), *trans. denied.* Equitable estoppel cannot ordinarily be applied against governmental entities. *Id.* The sole exception to the rule that equitable estoppel cannot be applied against governmental entities is that estoppel may be applied if the public interest would be threatened by the government's conduct. *Id.*

Here, Family Development seems to assume without conceding, for the purposes of this issue, that Rowlinson failed to apply for an ILP and that no ILP has ever been issued for Family Development's property. We shall do the same. Family Develop-

ment asserts that the following actions by Steuben County induced Family Development to purchase the property and begin developing it for use as a landfill even though no ILP existed: 1) approving Rowlinson's request for a special exception in 1975 without granting an ILP; 2) permitting Peter Putnam to construct and operate a landfill for approximately eleven years on Rowlinson's property without questioning the lack of an ILP; and 3) sending a letter to IDEM in 1989 at Serv–All's request that verified the existence of a special exception for Serv–All's property but did not discuss the lack of an ILP. However, as we noted above, equitable estoppel applies if *one party* knowingly misleads or induces *another party* to believe and act upon his or her conduct in good faith. Family Development's list of "actions" by Steuben County reveals, at best, that Steuben County may have made misled Rowlinson, Putnam, and Serv–All, but not Family Development. Indeed, Family Development does not show that it was aware of these "actions" when it purchased the property, or that Steuben County undertook those actions knowing that it could mislead Family Development or induce Family Development to act. Be-

cause Steuben County did not knowingly mislead Family Development or induce action on its part, equitable estoppel cannot apply.[6] *See, e.g., Hannon v. Metro. Dev. Comm'n of Marion County,* 685 N.E.2d 1075, 1081 (Ind.Ct.App.1997).

Furthermore, we cannot say that the public's interest is threatened by requiring Family Development to file a petition for an ILP. Family Development claims that if it were required to request a new ILP, then the special exception that was granted to Rowlinson would be negated, thereby undermining the reliability of zoning decisions. We disagree. As we have said, if Steuben County approved Rowlinson's request for a special exception without also granting him an ILP, and then sought to raise that issue later, only Rowlinson, Putnam, and perhaps Serv–All would be in a position to raise the doctrine of equitable estoppel against Steuben County. The public interest would not be served by permitting Family Development, who could have discovered the possible lack of an ILP when it bought the property, to raise earlier property owners' claims. We conclude that there is no compelling reason to deviate from the general rule bar-

---

**6.** We distinguish *Bd. of Zoning Appeals v. Beta Tau Housing Corp.,* 499 N.E.2d 780 (Ind.Ct. App.1986), a case cited by Family Development. In that case, a corporation purchased a building in 1971 and developed it into a fraternity house without first obtaining a special exception from the board of zoning appeals. *Id.* at 781. That same year, the corporation petitioned the board for a variance from setback requirements, which was denied. *Id.* In 1973, the corporation contacted the zoning administrator about a parking variance and was told that the board was unlikely to grant such a variance. *Id.* In 1974, the corporation contacted the zoning administrator about a building permit to remodel the property and was told that none was needed. *Id.* In 1981, the board finally notified the corporation that the house was in violation of the zoning ordinance, but the board waited

until 1985 to file a request to enjoin the corporation from using the building as a fraternity house. *Id.* at 783. We determined that the board was aware that the building was being used in a manner that violated the zoning ordinance, acquiesced in that use over a number of years, and caused the corporation to expend $15,000 to remodel the property in reliance upon the board's inaction. *Id.*

The holding in *Beta Tau* is inapplicable here because the board in *Beta Tau* misled the corporation into believing that its use of the property was permissible and induced the corporation to act. In the instant case, none of the actions cited by Family Development affected Family Development when they were undertaken. Instead, those actions may have, at best, induced action on the part of Rowlinson, Putnam, or Serv–All.

ring the equitable estoppel defense against governmental entities. *See, e.g., Schroeder,* 727 N.E.2d at 753. Thus, Family Development's equitable estoppel claim is without merit.

### B.

■ Next, Family Development asserts that it does not need to apply for a special exception and an ILP because the BZA approved Rowlinson's request for a special exception and an ILP in 1975, and Rowlinson's special exception and ILP apply to its proposed landfill. To resolve this assertion, it is necessary to examine special exceptions, ILPs, and the relationship between them in the Steuben County zoning ordinance.

■ Because we are analyzing the terms of the ordinance, a brief review of our rules of statutory construction is necessary. Interpretation of an ordinance is subject to the same rules that govern the construction of a statute. *Ragucci v. Metro. Dev. Comm'n of Marion County,* 702 N.E.2d 677, 681 (Ind.1998). The cardinal rule of statutory construction is to ascertain the intent of the drafter by giving effect to the ordinary and plain meaning of the language used. *T.W. Thom Const., Inc. v. City of Jeffersonville,* 721 N.E.2d 319, 324 (Ind.Ct.App.1999). We are not bound by the trial court's interpretation of a statute, but rather must make an independent legal determination as to the meaning and its application to the instant facts. *Deja Vu of Hammond, Inc. v. City of Lake Station,* 681 N.E.2d 1168, 1171 (Ind.Ct.App.1997).

■ A special exception—unlike a variance, which is a prohibited use that involves a deviation from legislated zoning classification—is a permitted use within the zoning classification if certain criteria are satisfied. *Ayers v. Porter County Plan Comm'n,* 544 N.E.2d 213, 218 n. 9 (Ind.Ct.App.1989). The granting of a special exception is mandatory upon compliance with the statutory criteria set forth in the ordinance. *Ash v. Rush County Bd. of Zoning Appeals,* 464 N.E.2d 347, 350 (Ind. Ct.App.1984). The Steuben County zoning ordinance that was in effect in 1975 defines a special exception as "the authorization of a use that is designated as such by section 3.1 as being permitted in the district concerned if it meets the requirements set out in section 3.3 and, upon application, is specifically authorized by the Board." Steuben County, In., Zoning Ordinance § 1.2 (1970). Thus, a special exception is a permitted use that is classified in the zoning ordinance. Once a board of zoning appeals authorizes a special exception, the special exception does not change or expire when the property changes ownership. *See, e.g., Steuben County v. Nat'l Serv–All,* 556 N.E.2d 1354, 1355 (Ind.Ct.App.1990) (reversing a trial court's invalidation of a condition to a special exception where a party had purchased property subject to the special exception and sought to have the conditions to the exception invalidated), *trans. denied.*

■ Turning to ILPs, it is well established that a municipality may require that permits be obtained from some board or public officer as a prerequisite to the erection of buildings or similar structures. *Metro. Bd. of Zoning Appeals of Marion County v. Shell Oil Co.,* 182 Ind.App. 604, 606, 395 N.E.2d 1283, 1284 (Ind.Ct.App. 1979). The Steuben County zoning ordinance that was in effect in 1975 provides, in relevant part, "no other *change* in the use of land that involves *a change* in any *structure* or in any *land,* or in the condition of the land, may be made unless the Building Commissioner, on application, issues an [ILP] authorizing *the change.*" Zoning Ordinance § 6.1(b) (1970) (emphasis added). The use of singular terms in

this provision indicates that an ILP is issued for a single proposal or project, such as the construction of a building. Furthermore, our legislature has also spoken on the question of ILPs, and the governing statute provides, in relevant part, "*A structure* may not be located and an improvement location permit for *a structure* on platted or unplatted land may not be issued unless *the structure* and its location conform to the municipal zoning ordinance." Ind.Code § 36–7–4–801(a) (emphasis added). Once again, the use of singular terms indicates that ILPs apply to one construction project at a time, rather than authorizing all future construction on the property. Thus, we discern from these provisions a legislative intent to limit the scope of ILPs to specific projects set forth in specific proposals. This limitation of scope ensures that future construction will be subject to regulation and will not undermine the stability of the zoning system. As Judge Barker has noted, "the purpose of the ILP requirement is to ensure that the new or renovated structure will comply with applicable zoning regulations." *Sagamore Park v. City of Indianapolis*, 885 F.Supp. 1146, 1149 (S.D.Ind. 1994).

Next, we compare special exceptions and ILPs pursuant to the Steuben County zoning ordinance that was in effect in 1975. The ordinance links special exceptions with ILPs. It provides, in relevant part,

No special exception may be granted ... and no other change in the use of the land that involves a change in any structure on or in any land, or in the condition of the land, may be made unless the Building Commissioner, on application, issues an [ILP] authorizing a change.

Zoning Ordinance § 6.1(b) (1970). Thus, an applicant seeking a special exception must also apply for, and receive, an ILP.

*Id.* However, ILPs and special exceptions are not identical in scope and extent. As we noted above, once a special exception is granted, it is a permitted use of the land and is not limited in duration or to the owner of the land who requested the exception. On the other hand, ILPs are intended by the legislature and by Steuben County to apply to specific construction or alteration projects. *See, e.g.,* Zoning Ordinance § 6.1(b) (1970).

Turning to the case at bar, it is undisputed that the BZA granted a special exception to Rowlinson in 1975. The parties dispute whether Rowlinson received an ILP, but for the purposes of our analysis we will assume that Rowlinson obtained an ILP as well as a special exception. After receiving the special exception and the ILP, Rowlinson leased a portion of his property to Putnam, who constructed a landfill and operated it until 1986. Now, Family Development has purchased the remainder of Rowlinson's property and wants to construct a landfill. Because special exceptions, once they are granted, remain an approved zoning classification, Rowlinson's special exception remains viable, and a landfill is a permissible use of Family Development's property. However, Rowlinson's ILP was issued so that he could construct a landfill, and Rowlinson, through his lessee Putnam, did just that. Once Putnam's landfill was complete, the change "in the condition of the land" was complete, and the ILP expired. Zoning Ordinance § 6.1(b) (1970). In order to construct a new landfill, Family Development must apply for a new ILP.

Nevertheless, Family Development asserts that it had a vested right in the BZA's 1975 issuance of an ILP, and that requiring it to apply for a new ILP pursuant to the current version of the zoning ordinance would abridge that right and

retroactively negate the BZA's 1975 ruling. We disagree.

■ We note that in the context of zoning and permits, a party generally does not gain a vested interest in the issuance of a permit. Instead, the doctrine of vested rights refers to one's right to have an application for a permit evaluated pursuant to a certain set of legal standards. As a general rule, an applicant for a permit has a right to have its application considered in accordance with the laws in effect when the application is submitted. *Yater v. Hancock County Bd. of Health*, 677 N.E.2d 526, 529 (Ind.Ct.App.1997), *reh'g denied.* In this case, we have determined that the ILP that the BZA issued in 1975 expired once Putnam's landfill was complete. Consequently, Rowlinson's ILP does not authorize Family Development to construct its own landfill. As a result, Family Development, which has never applied for an ILP for its proposed landfill, must apply for its own ILP, and it does not have a vested interest in having its application ruled upon pursuant to the terms of the zoning ordinance that was in effect in 1975.[7] *See Yater,* 677 N.E.2d at 529. The doctrine of vested rights is simply inapplicable here. Furthermore, be-

---

7. Family Development cites three cases in support of its vested rights claim: *Indiana Dep't of Envtl. Mgmt. v. Chem. Waste Mgmt. of Indiana, Inc.,* 604 N.E.2d 1199 (Ind.Ct.App. 1992), *trans. denied; Bd. of Zoning Appeals v. Shell Oil Co.,* 164 Ind.App. 497, 329 N.E.2d 636 (1975); and *Knutson v. State ex rel. Seberger,* 239 Ind. 656, 160 N.E.2d 200 (1959), *on reh'g.* These cases are distinguishable from the instant case. In *Chem. Waste,* a company applied for a hazardous waste disposal permit from IDEM. *Chem. Waste,* 604 N.E.2d at 1201. While the company's application was pending, the Indiana General Assembly enacted a law requiring applicants to disclose certain information. *Id.* IDEM announced that it intended to apply the law to the company's application, but we held that such an action would be improper because the company had a vested interest in having its application decided according to the laws in effect when the application was made. *Id.* at 1205. *Chem. Waste* is distinguishable from the instant case because Rowlinson's ILP was issued in 1975 for a specific project and expired when that project was complete. As a result, Family Development, which has not applied for an ILP for its property, has no interest in the zoning ordinance that was in effect in 1975.

In *Shell Oil,* a company applied for a building permit and an ILP to build a gas station. *Shell Oil,* 164 Ind.App. at 498, 329 N.E.2d at 637–638. Subsequently, the Fort Wayne City Council imposed a moratorium on gas station construction, and the company was told that its permit applications would not be granted due to the moratorium. *Id.* at 500, 329 N.E.2d at 639. We noted that "[t]he right to use property in accordance with prevailing zoning ordinances accrues upon the filing of an application for a building permit" and held that the moratorium could not be applied to the company's applications. *Id.* at 506, 329 N.E.2d at 642. *Shell Oil* is distinguishable from the instant case because Rowlinson's ILP was issued in 1975 for a specific project and expired when that project was complete. As a result, Family Development has no interest in the zoning ordinance that was in effect in 1975, but must instead meet the requirements in the current zoning ordinance if it applies for an ILP.

In *Knutson,* a landowner sought governmental approval of a plat. *Knutson,* 239 Ind. at 666, 160 N.E.2d at 200. The town board rejected the plat, and the landowner sought mandamus. *Id.* at 666, 160 N.E.2d at 200. Subsequently, the town board adopted a new subdivision control ordinance, pursuant to which the plan commission and not the town board had authority to approve plats. *Id.* at 666, 160 N.E.2d at 200. The town board claimed that because of the new ordinance, the trial court's order of mandamus against the town board was erroneous. *Id.* at 667, 160 N.E.2d at 200. Our supreme court disagreed, holding that the landowner had a vested interest in applying the laws that were in effect when the landowner filed suit. *Id.* at 668, 160 N.E.2d at 201. Once again, *Knutson* is distinguishable from the instant case because Rowlinson's ILP was issued in 1975 for a specific project and expired when that project was complete. As a result, Family Development has no interest in the zoning ordinance that was in effect in 1975.

cause Family Development has no vested right to apply the 1975 zoning ordinance to its landfill, we reject its claim that the current Steuben County ordinance is being retroactively applied.[8]  *See Metro. Plan Comm'n of Marion County v. State ex rel. Meyer*, 243 Ind. 46, 54, 182 N.E.2d 786, 789 (1962).

### C.

Now that we have addressed the pertinent preliminary issues raised by the parties,[9] we must apply our analysis to the trial court's ruling on the parties' cross-motions for summary judgment.

In Family Development's motion for summary judgment, Family Development requested that the trial court grant declaratory relief by declaring "that [Family Development] is entitled to proceed with its proposed landfill project without any further zoning approvals; and for all other just and proper relief." Supp. Record, p. 1. As we noted above, Family Development has no vested interest in the zoning ordinance that was in effect in 1975 because, assuming without deciding that Rowlinson received an ILP, that ILP does not authorize Family Development to build a landfill, and Family Development did not file an application for an ILP while that version of the ordinance was in effect. *See Yater*, 677 N.E.2d at 529. Indeed, it is undisputed that Family Development has never applied to the BZA for an ILP. Consequently, we turn to the current ver-

sion of the Steuben County zoning ordinance for guidance in determining whether Family Development has the requisite zoning approval to build its landfill.[10]

The current version of the zoning ordinance provides, in relevant part,

> No building or other structure may be erected, moved, added to, or structurally altered, nor any 'development' commenced by any person, firm, corporation, or governmental body not exempted by state law without first obtaining an [ILP] from the Steuben County Plan Commission. The Steuben County Plan Commission shall not issue an [ILP] if the proposed 'development' does not meet the requirements of this ordinance.

Steuben County, In., Zoning Ordinance § 6.1(a) (May 7, 1990). "Development" is defined in the ordinance, in relevant part, as "[m]ining, dredging, filling, grading, excavation, or drilling operations; . . . ." Zoning Ordinance, chapter 1 (May 7, 1990).

In the instant case, it is reasonable to conclude that constructing a landfill involves the erection of a structure or filling, grading, or excavation. Thus, pursuant to the current Steuben County zoning ordinance, Family Development must obtain an ILP prior to constructing the landfill. *See* Zoning Ordinance § 6.1(a) (May 7, 1990). It is undisputed that Family Development has not applied for an ILP with the Plan Commission. Thus, Family Development lacks full zoning approval for its

---

8.  Family Development also claims, in the alternative, that it does not need an ILP because the zoning ordinance that was in effect in 1975 exempted agricultural uses from the ILP requirement, and Family Development insists that a landfill is an agricultural use. However, the 1975 agricultural use exemption is irrelevant here because Family Development does not have a vested right to have its proposed landfill evaluated pursuant to that version of the zoning ordinance. *See Yater*, 677 N.E.2d at 529.

9.  We do not address the parties' dispute as to whether the special exception was a permitted use, a conforming use, or a nonconforming use because we have resolved this case on other grounds.

10.  The parties agree that the current version of the Steuben County zoning ordinance was adopted in 1990.

landfill, and it is not entitled to a declaratory judgment declaring otherwise. Consequently, although there is no material dispute of fact, Family Development is not entitled to judgment as a matter of law, and we must reverse the trial court's judgment for that reason. *See, e.g., Indiana Dep't of Pub. Welfare v. Murphy,* 608 N.E.2d 1000, 1003 (Ind.Ct.App.1993) (reversing a summary judgment as contrary to law although there was no dispute of material fact).

Turning to the appellants' motions for summary judgment, Steuben County asked the trial court for a general grant of summary judgment, whereas Waste Watchers asked the trial court to enter summary judgment in its favor "on all issues related to zoning." Supp. Record, p. 190. Because the trial court explicitly reserved a ruling on damages, and neither Steuben County nor Waste Watchers has presented argument in regards to Family Development's claim for injunctive relief, we shall limit our review of the appellants' motions to the zoning issues raised in Family Development's claim for declaratory judgment.

Here, Family Development is required to obtain an ILP prior to constructing its landfill. *See* Zoning Ordinance § 6.1(a) (May 7, 1990). Consequently, the only factual issue to be resolved is whether Family Development has applied for an ILP. There is no dispute that Family Development has not applied for an ILP. Thus, Family Development lacks full zoning approval for its landfill. There is no material dispute of fact, and Steuben County and Waste Watchers are entitled to judgment as a matter of law. Consequently, the trial court's denial of their motions for summary judgment cannot stand. *See, e.g., Long v. Dilling Mech. Contractors, Inc.,* 705 N.E.2d 1022, 1027 (Ind.Ct.App.1999) (reversing the trial court's denial of appellants' motion for summary judgment where the appellee could not recover as a matter of law on its legal theories), *reh'g denied, trans. denied.*

For the foregoing reasons, we affirm the judgment of the trial court in part, reverse the judgment of the trial court in part, and remand with instructions to enter summary judgment in Steuben County and Waste Watchers' favor on Family Development's claim for declaratory judgment.

Affirmed in part, reversed in part, and remanded with instructions.

KIRSCH and MATTINGLY–MAY, JJ., concur.