**LUCAS OUTDOOR ADVERTISING, LLC, Appellant–Petitioner,**

v.

**CITY OF CRAWFORDSVILLE, Indiana Board of Zoning Appeals, Appellee–Respondent.**

No. 54A04–0509–CV–507.

Court of Appeals of Indiana.

Jan. 18, 2006.

Rehearing Denied April 27, 2006.

A. Richard M. Blaiklock, Lewis Wagner, LLP, Indianapolis, for Appellant.

David S. Peebles, Harris, Harvey, & Peebles, LLC, Crawfordsville, for Appellee.

## OPINION

BAKER, Judge.

The question presented here is whether the Crawfordsville sign ordinance prohibits the placement of advertisement billboards. In a sense, it does. Appellant-petitioner Lucas Outdoor Advertising, LLC (Lucas), appeals the trial court's judgment upholding a decision in favor of the City of Crawfordsville (City) Board of Zoning Appeals (BZA) regarding the denial of its applications for the placement of a number of billboard signs. Specifically, Lucas claims that the decision denying the applications was arbitrary, capricious, and contrary to law, and that the judgment must be set aside because the BZA had previously granted permits to other applicants under the City's sign ordinance. Concluding that the decision to deny Lucas's permit applications for the billboards was proper, we affirm the judgment of the trial court.

### FACTS

In February 2004, Dale Louden, the President of Lucas, contacted Jacob Hurt, the Zoning Administrator for the City. The purpose of this meeting was to discuss Lucas's intention to construct and place billboards in and around the City. At that time, Louden obtained a copy of the City's zoning code regarding the placement of signs, a zoning map, and some blank improvement location permit applications. Sometime during the course of their discussions, Hurt told Louden that the provisions of the ordinance dictated the City's requirements for the construction of billboards. Over the next six months, Louden explored possible locations in the City on which to place the billboards. Louden searched for individual landowners in the appropriate zoning areas with whom to sign land leases for the billboards. In the end, Louden's efforts were successful in that he signed six land leases for locations within the City. Thus, in August 2004, Louden filed six completed sign permit applications, five of which he amended in September. Five of the signs were to be freestanding billboards and one was to be attached to the side of a building.

After receiving the initial applications, Hurt obtained a written opinion letter from the City Attorney dated September 7, 2004. The City Attorney concluded that the billboards were not allowed under Crawfordsville's Municipal Code. Hurt informed Louden in a telephone conversation that the amended applications had been denied. Hurt also told Louden that he should appeal the decision to the BZA.

On October 4, 2004, Lucas appealed the failure to approve the permits to the BZA. At a hearing that commenced approximately two weeks later, the BZA considered the arguments presented by Lucas and his legal counsel and those of the Zoning Administrator and the City. In the end, the BZA voted unanimously to uphold the administrator's decision denying each of the applications. Lucas was informed that the permits were denied based upon the City Attorney's opinion letter indicating that the ordinance prohibited off-premises billboard advertising. However, the City acknowledged in its opinion letter that portions of the zoning ordinances were "confusing" and contained "uncertain" language. Tr. p. 367–70.

On November 19, 2004, Lucas filed a "Verified Petition for Writ of Certiorari to Review the Decision of the [BZA]." Appellant's App. p. 14. Lucas maintained that the BZA's decision was contrary to law and that the City's zoning code was applied in an arbitrary and capricious manner in these circumstances. Hence, because Lucas claimed that the applications satisfied all the criteria of the ordinance, the City should have granted the permits.

On January 10, 2005, the City amended a section of the ordinance and acknowledged that "certain ambiguities have arisen over the interpretation of Section 153.57, specifically concerning billboards and other signage, which the Council wants to resolve by . . . amending this section. . . ." Tr. p. 145.[1] The City attorney recommended that the City "grandfather existing billboards and ban new ones." Tr. p. 369.

On May 9, 2005, the trial court entered an order denying the petition. It was determined that five of Lucas's billboard applications failed to comply with the portion of the ordinance that addressed height requirements and setback limitations that pertained to signage. The trial court also ruled that Lucas's application for the billboard that was to be placed on the side of a building did not comply with the ordinance, as "the set-back distance from the road is not certain." Appellant's App. p. 11. Moreover, the trial court concluded that all six of the billboard applications did not comply with section 153.57(D)(1) of the ordinance—the provision stating that "signs shall not contain information or advertising for any product not sold or produced on the premises." Appellant's App. p. 130.

The trial court went on to observe that if billboards had been constructed illegally in the past and had not yet been the subject of enforcement proceedings, the doctrine of estoppel does not apply in these circumstances because "no estoppel can grow out of the unauthorized acts of a public officer of limited authority." Id. at 12. Additionally, the trial court reasoned that laches does not apply to a municipality regarding the enforcement of zoning regulations. Thus, it was determined that other possible violations of the ordinance by different billboard companies did not mandate that Lucas's signage should be permitted on the premises.

The trial court further acknowledged that the City did not comply with the section of the ordinance that required written notification to Lucas within five days of the application containing the deficiencies therein. By the same token, the trial court noted that the City ensured that Lucas appeared before the BZA at its next possible meeting pursuant to the procedure for appealing a ruling. The trial court also observed that legal counsel represented Lucas at the BZA meeting. And Lucas appeared to have had the opportunity to prepare and present its case at that meeting. Hence, the trial court reasoned that Lucas was not materially prejudiced or harmed by the City's failure to comply with the notification requirements of the ordinance. Therefore, it was concluded that the City's failure to notify Lucas in writing of its decision in a timely manner amounted to harmless error. Lucas now appeals.

## DISCUSSION AND DECISION

### I.  Standard of Review

■ Before proceeding to the merits of Lucas's arguments, we note that the construction of a zoning ordinance is a question of law. *Story Bed & Breakfast, LLP v. Brown County Area Plan Comm'n*, 819 N.E.2d 55, 65 (Ind.2004). In construing the language of a zoning ordinance, this court follows the ordinary rules of statutory construction. *Columbus Bd. of Zoning App. v. Big Blue*, 605 N.E.2d 188, 191 (Ind.Ct.App.1991). We will interpret the ordinance as a whole and give its words their plain, ordinary, and usual meaning. *Id.* The cardinal rule of statutory construction is to ascertain the intent of the drafter by giving effect to the ordinary

---

1. The substantive changes in the ordinance   are set forth below.

and plain meaning of the language used. *Steuben County v. Family Dev., Ltd.*, 753 N.E.2d 693, 701 (Ind.Ct.App.2001), *trans. denied.*

■■■ Additionally, when reviewing a decision of the BZA on an issue of law, no deference is afforded the BZA, and reversal is appropriate if an error of law is demonstrated. *Evansville Outdoor Adver., Inc. v. Bd. of Zoning Appeals,* 757 N.E.2d 151, 158 (Ind.Ct.App.2001), *trans. denied.* We must determine whether the decision of the BZA was based upon substantial evidence. *Id.* Its decision should be reversed if it is arbitrary, capricious, or an abuse of discretion. *Id.*

### II. Lucas's Claims

#### A. Arbitrary, Capricious and Contrary to Law?

In this case, Lucas claims that the trial court erred in interpreting the terms of the ordinance in upholding the BZA's decision to deny its applications for the placement of the billboards. Lucas points out that the City initially agreed that the ordinance permitted outdoor billboard structures like the ones it wanted to construct, but it subsequently interpreted the language in the ordinance to prohibit such structures and formally amended its billboard ordinance to specifically prohibit these types of signs. Hence, Lucas contends that such action amounted to "administrative and interpretive gymnastics" that were arbitrary and capricious, contrary to its rights, and "contrary to [the rules governing] statutory interpretation." Appellant's App. p. 7–8.

■■■ In addressing Lucas's contentions, we note that zoning ordinances are enacted for the purpose of promoting the health, safety, morals, or general welfare of a community by regulating the use and development of land. *Evansville Outdooor*

*Adver.*, 757 N.E.2d at 160. Along these lines, a municipality may enact ordinances that require obtaining an improvement location permit prior to the erection of an off-premise sign on private land, especially considering that many members of the general public view such means of advertisement as an "eyesore" and a detriment to property values. *Id.* The purpose behind the procurement of an improvement location permit prior to the alteration, construction, or repair of a structure on platted or unplatted land is to ensure compliance with the local jurisdiction's zoning code. *Id.*

■■■ In this case, section 153.57 of the ordinance sets forth a number of requirements regarding the placement of signs and billboards. At the outset, this section provides that "[n]o sign, billboard, or exterior graphic display shall be permitted in any district except as herein provided." Appellant's App. p. 130. Section 153.57(D) of the ordinance goes on to provide that

> *"Business signs shall be permitted in connection with any legal business or industry when located on the same premises, and if they meet the following requirements :*
>
> (1) *Signs shall not contain information or advertising for any product not sold or produced on the premises.*
>
> (2) Signs shall have an aggregate surface size greater than 5 square feet for each foot or width of the principal structure on the premises. Where no principal structure exist, the foregoing limitations shall be computed as though there were such a structure of maximum size permitted on such lot by this zoning ordinance.
>
> (3) Signs shall not extend beyond a point 2 feet inside the vertical plan of the curb and shall clear the side-

walk surface by 8 feet, inside the corporate limits. Signs shall not extend into the public right-of-way outside the corporate limits.

(4) Signs shall not be illuminated in any manner, which cause undue distraction, confusion or hazard to vehicular traffic.

*Id.* at 130–130(A) (emphasis added). Section E of Ordinance 153.57(E) goes on to provide that:

Free standing signs shall not exceed 30 feet in height, except in the B–3, I–1, and I–2 district, where signs may be up to 100 feet in height, if approved by the Zoning Administrator. Free standing signs may not be located closer than 10 feet to any street right-of-way line, nor closer than 30 feet to any adjoining lot line. Maximum height may exceed 100 feet in the B–3, I–1, or I–2 districts if approved by the Board of Zoning Appeals. To serve a group of business establishments there shall be only 1 freestanding sign for each building regardless of the number of businesses conducted in said building.

In construing the above provisions, Lucas maintains that when these sections are read together "it is clear that section 153.57(D) relates to 'business signs,' meaning on-premises signs advertising for a business also located on the premises, whereas section 153.57(E) relates to billboards advertising for off-premises businesses, as there is no reference to on-premises advertising with that sub-section." Appellant's Br. p. 9. To justify this particular reading of the ordinance, Lucas relies on the portion of section (E) set forth above that addresses the height and set-back limitations in support of its claim that the applications should have been approved because the proposed billboards met the necessary requirements.

In our view, whatever ambiguity might have existed in the ordinance appears to be the result of paragraph (E) being a separate paragraph from the enumerations of paragraph (D) above it. To be sure, the ordinance bans all signs that are not in conformity with it. It goes on to specify and regulate the appropriate types of signs such as temporary, bulletin board, on-premises business and the like, and it then lists and regulates the technical requirements. The legislative intent of the Common Council is clear from subsection (D)(1) and from the ordinance as a whole, including the last sentence of paragraph (E) showing the continued legislative focus on "on-premises" signs. In our view, when reading the ordinance as a whole, there is established an ascertainable standard with respect to off-premises signage on which both sign applicants and the City can rely—it is prohibited.

As noted above, the City conceded at some point that the ordinance as set forth in the record is ambiguous; however, it is apparent that such confusion arises from the codification and initial labeling of the sections therein. As a result, in an effort to remove any ambiguity from the ordinance, the January 10, 2005 amendments provided as follows:

(a). Section 153.57(E). Section 153.57(E) shall be and hereby is instead recodified as a new Section 153.57(D)(5); and

(b). Section 153.57(E) shall be and is replaced in its entirety with the following language: "(E) The construction or placement of new signs greater in size than the limits set forth in Section 153.57(D)(2), including billboards, shall be and hereby is prohibited."

*SECTION 2.* All other provisions of the existing ordinance not in conflict

with the above amendments shall remain in full force and effect.

Appellant's App. p. 145.

Notwithstanding the amendment, the introductory language of the ordinance—as originally enacted—bans all signs that are not in conformity with its requirements. Put another way, signs that contain information or advertising for products that are not "sold or produced" on the premises are prohibited. *Id.* at 130. As described above, the remaining sections go on to list and regulate appropriate types of signs, including bulletin boards, those that are temporary, and on-premises signs, and it then lists and regulates the technical requirements for signs such as area and height. To reiterate, when the ordinance is read in its entirety, off-premises business signs are prohibited, including those that Lucas had proposed. As a result, we reject Lucas's argument that the decision to deny its applications for the placement of his signs was arbitrary, capricious or contrary to law.

### B. Laches and Estoppel

In a related argument, Lucas claims that its applications should have been granted on the grounds of laches and estoppel. Specifically, Lucas contends that the BZA could not lawfully deny its application permits when it had previously approved others.

Generally, government entities are not subject to equitable estoppel. *Brown County v. Booe,* 789 N.E.2d 1, 11 (Ind.Ct.App.2003). However, in some circumstances, government entities may be estopped. Specifically, application of this doctrine might be appropriate where the party asserting estoppel has detrimentally relied on the governmental entity's affirmative assertion or on its silence where there was a duty to speak. *Id.* A party asserting an estoppel defense must prove its "1) lack of knowledge and of the means of knowledge as to the facts in question, 2) reliance upon the conduct of the party estopped, and 3) action based thereon of such a character as to change his position prejudicially." *Id.* at 7.

By the same token, if other signs or billboards have been permitted and such approval was wrongly given by a Zoning Administrator or some other city official, the rule is well settled "that no estoppel can grow out of the unauthorized acts of a public officer of limited authority." *Sandy v. Bd. of Comm'rs of Morgan County,* 171 Ind. 674, 87 N.E. 131, 132 (1909). Moreover, if billboards have been placed illegally in the past and not yet been the subject of enforcement proceedings, at least one case has held that the doctrine of laches never applies to a municipality in the enforcement of its zoning regulations. *Ad Craft, Inc. v. Area Plan Comm'n,* 716 N.E.2d 6, 18 (Ind.Ct.App. 1999).

Here, we note that Lucas has not shown that it ever undertook any action based on the Zoning Administrator's decision "of such a character as to change its position prejudicially," which is the third prong of *Booe* set forth above. Rather, the evidence showed that Lucas negotiated its billboard leases subject to zoning approval. Moreover, Lucas has not alleged that it paid any fees or expenses that the City had collected. Therefore, Lucas has failed to show that it should have prevailed under the theories of laches or estoppel. Hence, Lucas's claim fails on this basis as well.

The judgment of the trial court is affirmed.

NAJAM, J., and BAILEY, J., concur.