**STORY BED & BREAKFAST, LLP, Appellant–Plaintiff,**

v.

**BROWN COUNTY AREA PLAN COMMISSION, Appellee–Defendant,**

and

**Patricia N. March, Intervener–Defendant.**

No. 07A01–0206–CV–201.

Court of Appeals of Indiana.

Aug. 29, 2003.

---

Steven K. Emery, Holly M. Harvey, Bunger & Robertson, Bloomington, IN, Attorneys for Appellant.

David B. Schilling, Bloomington, IN, Attorney for Brown County Area Plan Commission.

Michael A. Mullett, Mullett & Associates, Indianapolis, IN, Attorney for Patricia N. March.

## OPINION ON REHEARING

MATHIAS, Judge.

Appellee and cross-appellant Patricia N. March ("March") has petitioned for rehearing in *Story Bed & Breakfast v. Brown County Area Plan Commission*, 789 N.E.2d 13 (Ind.Ct.App.2003), which we grant for the limited purpose of clarifying our original opinion. Although we will briefly address each of March's individual assertions, we first address an issue that pervades the majority of March's petition.

*Story* holds that, for the purposes of this case, Indiana Code chapter 36–7–4's failure to define "condition" and "commitment" in a meaningful fashion renders objective statutory interpretation of the two terms an impossible enterprise. *Story*, 789 N.E.2d at 18. For this reason and this reason alone, we reverted to common law tenets applicable, which require reasonable notice before a land use restraint may be enforced against a subsequent bona fide purchaser of real property ("BFP"). The policy reasons set forth in the opinion were discussed solely for the purpose of determining what form of notice is reasonable under common law—not for the purpose of determining that common law should be applied in the first place.

### March's Contentions

March first contends that this court "ignored Indiana black letter law" by not charging Story Bed & Breakfast ("Story") with constructive notice of the "conditions" contained in the Story Property Planned Unit Development ("PUD"). Petition for Rehearing at 2. However, this contention

blatantly begs the central question of this case—whether the land use restrictions attached to the Story property PUD are conditions. As suggested above, were we able to define "condition" and the land use restrictions at issue fit within the definition, we might well have charged Story with constructive notice.

Second, March contends that this court rejected Indiana law by failing to recognize that there is a distinction between "commitments" and "conditions" and by failing to acknowledge that only commitments are required to be recorded. Petition for Rehearing at 3. Noticeably absent from March's argument is a proffered definition of either "condition" or "commitment" or a persuasive argument contrary to the opinion's syllogistic demonstration of why the two terms cannot be differentiated. As Story aptly notes, March seems to assert that simply because the statute recognizes a distinction between the two terms, this court can easily drop the Story property PUD land use restrictions into one category or the other.[1] Response to Petition for Rehearing at 2. Defining the two terms is a condition precedent to distinguishing the two terms.

Third, March contends that this court "rewrote" the Brown County Zoning Ordinance ("Zoning Ordinance"). Petition for Rehearing at 5. March does not appear to be challenging the opinion's determination that covenants must be recorded before they may be asserted against a BFP, but is asserting that the land use restrictions at issue are conditions rather than covenants.[2]

However, like March's undefined "condition," the Zoning Ordinance's undefined "covenant" also must be incorporated into the Brown County PUD designation. Brown County Zoning Ordinance § 21(C)(1)(4). This fact and the Zoning Ordinance's statement that "[t]he commission may impose any reasonable conditions upon its approval, including the recording of covenants" implies that covenants and conditions—however defined—are not mutually exclusive terms. Brown County Zoning Ordinance § 21(C)(2)(2). In any event, the Zoning Ordinance's treatment of undefined covenants, while failing to enunciate the treatment of any other land use restriction term, necessarily indicates that the land use restrictions at issue are cove-

1. March claims this position is supported by *South Creek Associates v. Bixby*, 781 P.2d 1027, 1033 (Colo.1989). Petition for Rehearing at 4–5. *Bixby* stands for the proposition that an unrecorded "condition" may be asserted against a subsequent BFP. *Id.* at 1028. March's assertion, again, assumes that the land use restrictions at issue are conditions. We do not challenge March's assertion that a PUD is a proper legislative enactment; rather, the issue is whether the land use restrictions attached to the Story property PUD are conditions under Indiana Code section 36–7–4–1512. Our reference to and rejection of *Bixby* was solely for the purpose of determining what form of notice is required under common law.

March also notes that the opinion incorrectly states that the PUD at issue in *Bixby* was recorded. Petition for Rehearing at 4.

March's assertion is a fair reading of the opinion; however, the opinion is merely asserting that the recording in *Bixby*, specifically and by name, incorporated the PUD at issue and referenced the conditions attached to it—thus, giving the petitioners in *Bixby* considerably more notice than that available to Story, which had no knowledge of land use restrictions attached to the PUD.

2. March's use of Plan Commission language to assert that the land use restrictions at issue are conditions is a good example of the opinion's concern that the undefined and largely indistinguishable nature of "conditions" and "commitments" allow litigants to use the pure happenstance or self-serving language used by the parties to less-than-objectively assign the recording requirement, or lack thereof. *See Story*, 789 N.E.2d at 17–19.

nants.[3]

■ Fourth, March contends that the Story property PUD's availability in the Brown County Area Plan Commission ("Plan Commission") office provided Story with reasonable notice. Petition for Rehearing at 9. However, we find it unreasonable to require a BFP to search any county's plan commission files—meticulously reading the minutes of plan commission meetings, likely over a period of years—for land use restrictions, which may not even exist, when any such plan commission can avoid this problem by taking the simple, efficient step of recording the land use restrictions.

■ Fifth, March cites *Keybank National Association v. NBD*, 699 N.E.2d 322 (Ind.Ct.App.1998), for the proposition that Story's knowledge of the PUD designation should have put Story on inquiry notice. Petition for Rehearing at 13. March quotes, "[w]hatever *fairly* puts a reasonable, prudent person on inquiry is sufficient notice to cause that person to be charged with actual notice, where the means of knowledge are at hand and he omits to make an inquiry." Petition for Rehearing at 5 (emphasis added).[4] *Keybank* requires "fair" notice. We believe it "fair" for Story to assume that, if there

was a restraint against its common law right to the unrestricted use of its property, such restraint would and should be located in the recorder's office, or otherwise memorialized in a manner reasonably calculated to give it notice—not buried in the Plan Commission meeting minutes of years past.

March also notes,

A complete title search is not confined to the records of the county recorder. Although actual practice may vary somewhat from county to county, an abstractor or title insurance agent will routinely examine records affecting title to real estate in the office of the recorder, auditor, assessor, treasurer, sheriff, and clerk of courts in the county where the real estate is located.

Petition for Rehearing at 14 (quoting *WorldCom Network Services v. Thompson*, 698 N.E.2d 1233, 1241 (Ind.Ct.App.1998)). *WorldCom's* holding, concerning record notice, was premised on the interpretation of the 1905 Highway Act and the intent of the general assembly expressed in this act. *Id.* at 1238, 1241. Because we are unable to interpret the intent of the general assembly in the case at bar, our opinion is premised upon common law rather than

---

**3.** We note that the unorthodox nature of PUD ordinances make March's characterization of the notice provided by, and purely legislative aspect of, conditions very questionable.

**4.** The actual and complete quote in *Keybank* reads, "inquiry from which he would have ascertained the existence of a deed or mortgage" rather than ending the sentence with "inquiry." *Keybank*, 699 N.E.2d at 327. Assuming for the sake of argument that actual notice involving the existence of a deed or mortgage is similar to actual notice involving the existence of a land use restriction, the two cited examples in *Keybank* involved actual notice arising from the appellant having been presented with a copy of a sales contract at closing and from an instance where the appel-

lant had received a letter from a title insurance company advising him of the necessity of terminating the adverse interest. *Id.* (citing *Altman v. Circle City Glass Corp.*, 484 N.E.2d 1296, 1299 (Ind.Ct.App.1985); *Huffman v. Foreman*, 163 Ind.App. 263, 323 N.E.2d 651, 657 (1975)). Story's information that its property was subject to a PUD, which may or may not have included land use restrictions and which land use restrictions Story might reasonably have assumed would have been recorded, is a far cry from having been presented with a copy of a sales contract revealing a clear adverse interest or receiving a letter from a title insurance company advising of the necessity of terminating an adverse interest.

statutory interpretation. Had we been able to define "condition" and the land use restrictions at issue fit that statutory definition, as with *WorldCom,* we would have found the land use restrictions enforceable despite their location in the minutes of Plan Commission meetings.

If the general assembly clearly determines that PUD land use restrictions should be maintained in the minutes of plan commission meetings rather than with the county recorder, we will enforce such a determination, within the property rights guaranteed by our state and federal constitutions.[5] However, absent such direction, we will not require BFPs to perform a potentially exhaustive search through the minutes of plan commission meetings for a land use restriction that may or may not exist. To do so would unnecessarily increase the cost of land transactions by requiring a more lengthy, yet considerably less certain, check of records and create additional liability exposure for title companies, when all of these problems can be avoided by the simple and efficient act of recording PUD land use restrictions.

Subject to this clarification, our earlier opinion is affirmed.

BAKER, J., concur.

RILEY, J., would deny petition without opinion.

---

5. Although we are unable to determine to what restrictions the recording requirement applies, we find it significant that the PUD statute intends PUD land use restrictions to be recorded in certain instances.